(Jan. 14, 1922.    No 2656.)

# DAY v. TRIGG.

## SYLLABUS BY THE COURT

A judgment rendered after trial, with full opportunity for the parties to be heard, and with no extrinsic fraud, may not be attacked by a proceeding commenced to vacate it after it has become final, solely on the ground that it was obtained by false testimony.

Appeal from District Court, De Baca County; Bratton, Judge.

Application by W. S. Day against H. Trigg in the district court for a writ of audita querela to vacate a judgment in favor of the latter and against the former.  A demurrer to the petition was sustained, the proceeding dismissed, and petitioner appeals. Affirmed.

Ed S. Gibbany, of Roswell, for appellant.

T. E. Mears, of Portales, for appellee.

## OPINION OF THE COURT

DAVIS, J.   In June, 1919, appellee, H. Trigg, recovered judgment for $1,000 and costs against appellant, W. S. Day, in the district court of De Baca county.  The recovery was based upon a claim for cottonseed cake furnished for appellant's cattle and for services in feeding it.  On June 26, 1921, two years after the entry of judgment, appellant applied to the district court for a writ of audita querela to vacate it.  A demurrer to his petition was sustained and the proceeding dismissed, and he thereupon took this appeal.

As grounds for his petition for the writ appellant alleged that the judgment was obtained by false testimony on the part of appellee and Fred Riley,

his employee. The specific charges are set out in his complaint as follows:

"That upon the trial of said action the said H. Trigg testified that all of the cotton seed cake which he fed to the cattle of the plaintiff was shipped from the town of Ft. Sumner, in said county and state, by him, the said H. Trigg, to the town of Buchanan, in said county and state, where the adjoining ranches of said parties to said judgement are situated, and that he had lost his bills of lading for such shipments; that upon said trial the said H. Trigg only produced receipts or bills for five or six tons of cotton seed cake which he had purchased at Ft. Sumner and shipped to Buchanan, from the mercantile house of Earickson & Co. at Ft. Sumner; that he testified that he had shipped many other shipments of tons of cake, which, together with the services of his hand, Fred Riley, would amount to more than $2,000, all of which was false and untrue, except as to the said cotton seed cake purchased and shipped from the mercantile establishment of Earickson & Co.; that complainant had no knowledge of the truth or falsity of the shipments claimed to be made by the said H. Trigg, and no way on the trial to prove the said statements were false; that the said H. Trigg falsely, willfully, and with intent to defraud and deceive this said court and to oppress complainant so advised and suborned the said Fred Riley, who had no definite means of knowing the amount of cake which was shipped to Buchanan by the said Trigg, and by the said Fred Riley fed to Trigg's and the complainant's cattle, so that the said Fred Riley believed him and testified in corroboration of the amount of said shipments as fed by him, believing such testimony was true."

Summarizing these allegations, the charge is that appellee swore falsely as to the amount of cotton seed cake he furnished appellant and induced Riley to swear falsely as to the amount he fed, although Riley believed his testimony true when given—an apparent inconsistency, since Riley necessarily testified from personal knowledge as to his own actions.

The demurrer was upon the ground that the complaint did not state a cause of action and, specifically, that it showed upon its face that the false swearing was upon an issue raised on the trial, was an intrinsic matter involved on the trial, and that the matters complained of were adjudicated in the original cause and determined against appellant. The

facts relied upon as the basis for this demurrer do affirmatively appear on the face of the complaint, and it may be further stated that on the trial of the original action both appellant and appellee were present and introduced evidence in support of their contentions.

In Turknett v. Western College, 19 N. M. 572, 145 Pac. 138, this court declined to hold that the writ of audita querela was not available in this jurisdiction. But, assuming that it is, the class of cases falling within its scope has not been extended either by statute or decision. The writ usually issued only on the ground of some matter of defense or discharge arising subsequent to the rendition of the judgment complained of.

The parties, however, have treated the case as though it were a bill of review or other proper method for securing relief against a judgement obtained by fraud, and we will therefore consider it in the same way.

The question for decision upon the merits is as to whether a judgment which has become final may be vacated through an independent proceeding in the nature of a bill of review, solely upon the ground that it was obtained by false testimony.

There is no allegation that through any act of appellee appellant was defrauded or deceived or that by concealment or otherwise he was prevented from making his defense, except as the perjury itself may constitute deceit. While it is alleged that the judgment was obtained as the result of the false testimony, there is no statement that it was the only evidence upon the disputed point. It is alleged that appellant had no knowledge "of the truth or falsity" of this testimony at the time of trial, but there is no allegation that by the exercise of rea-

sonable diligence he might not have obtained it. And
in this connection it may be observed that from the
facts as stated, though not pleaded in detail, it ap-
pears that the cake was fed to appellant's own cat-
tle and was shipped by railroad from Ft. Sumner to
Buchanan. The case was tried at Ft. Sumner, and
the railroad records were presumably available there
to show the actual shipments. The amount of cake
actually shipped and fed was the vital issue contest-
ed in the case, and it would seem that appellant
might well have prepared himself upon this point
in advance of trial or during its course. In the
absence of any showing that he was prevented from
doing so by some act or deceit of appellee, or any
allegation of facts showing diligence on his part, we
are not able to say that the decision of the trial
court did not result from his own negligence in
preparation. There was no fiduciary relation be-
tween the parties, and no obligation upon appellee
to disclose the facts upon which his action was
based, nor could appellant rely upon him to furnish
facts for his defense, except to the extent that he
could assume that every witness, even an adversary
party, will testify truly when he takes the stand.
Nor is this court advised as to when appellant dis-
covered the falsity of the testimony—information
which likewise might be of value in considering his
diligence. We have before us, therefore, the nar-
row question as to whether a judgment may be set
aside for perjury committed on the trial, upon a
proceeding instituted some two years later, and the
situation is not complicated by various features
which have furnished strong equitable considera-
tions for vacating a judgment in other cases de-
cided by other courts.

In determining this case we are met with two
conflicting principles, both of which can not be given
full effect. Any intentional false swearing shocks
the conscience. The primary purpose of every legal

proceeding is to ascertain the rights of the parties and to do justice between them. If a court's decision is induced by perjured testimony, there is a miscarriage of justice, judicial machinery has to that extent failed to accomplish the purpose for which it was created, and the first impulse is to seek a way to relieve the defeated party from the loss sustained through the wrongdoing of his opponent.

On the other hand, there is the ancient and fundamental principle that there must be some end to litigation. An issue once fully determined, with complete opportunity for each party to present all available proofs in support of his contention, must be left at rest, or litigation will become interminable. In every case of conflicting testimony the charge of willful falsity may arise, and the tendency of each party, convinced of the justice of his own cause, is to charge intentional falsity to the witness testifying against him. A system which would permit the repetition of the trial of issues once fully decided would be intolerable.

Appellant, as we have seen, had full opportunity to present his proofs to the court. No act or failure to act on the part of appellee prevented him from doing so. He knew that the amount of cake furnished by appellee was the subject of the litigation. He might well have anticipated that the testimony given on the trial by appellee and his witnesses would be in accordance with the claim set up in the complaint. Since he was contesting this, he evidently believed the claim was unfounded. To what extent he prepared to meet the situation which he must have known would arise on the trial the pleadings in this case do not advise us, but at least he makes no claim of diligence, or that the facts apparently now available to show the falsity of the testimony could not have been obtained then by

proper investigation and effort. Under these circumstances, and at the risk of leaving in force a judgment wrongfully obtained, we must hold that he is not entitled to a second opportunity to disprove the facts upon which the judgment was rendered, and that the principle that one fair trial terminates the issues decided in it must control.

Appellant argues that specific fraud arose from appellee's testimony that he had lost the bills of lading covering certain shipments which he claimed to have made from Ft. Sumner, thus concealing the truth and deceiving appellant in this regard. But the underlying question was as to the amount shipped and fed. False swearing to that amount was directly material. A further false statement that he had once had bills of lading for such shipments and had lost them neither injured nor deceived appellant more than did the false testimony to the main fact.

The case of U. S. v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, is the leading federal authority upon the question. It arose under a bill of review, the purpose of which was to vacate a judgment which, it was asserted, was obtained by the use of a false document and by perjured depositions presented in its support. The court, after saying that there are no maxims of law more firmly established or of more value in the administration of justice than those designed to prevent repeated litigation between the same parties in regard to the same subject, stated that there is an exception to the general rule in cases where, by reason of some fraud practiced by the successful party directly upon his opponent, he was prevented from presenting all his case to the court, so that in fact there was no adversary trial or decision of the issues.

In laying down the rule which we believe ap-

plicable here the court said:

"On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. Mr. Wells, in his very useful work on Res Adjudicata, says, section 499: 'Fraud vitiates everything, and a judgment, equally with a contract; that is, a judgment obtained directly by fraud, and not merely a judgment founded on a fraudulent instrument; for, in general, the court will not go again into the merits of an action for the purpose of detecting and annulling the fraud. * * * Likewise, there are few exceptions to the rule that equity will not go behind the judgment to interpose in the cause itself, but only when there was some hindrance besides the negligence of the defendant, in presenting the defense in the legal action. * * *'"

After reviewing the authorities the court summarized the principle involved and applied it to the facts of that case in the following language:

"We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered. * * *

"The mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.

"The case before us comes within this principle. The genuineness and validity of the concession from Micheltorena produced by complainant was the single question pending before the board of commissioners and the district court for 4 years. It was the thing, and the only thing, that was controverted, and it was essential to the decree. To overrule the demurrer to this bill would be to retry, 20 years after the decision of these tribunals, the very matter which they tried, on the ground of fraud in the document on which the decree was made. If we can do this now, some other court may be called on 20 years hence to retry the same matter on another allegation of fraudulent combination to

this suit to defeat the ends of justice; and so the number of suits would be without limit and the litigation endless about the single question of the validity of this document."

The case of U. S. v. Throckmorton was followed by the Supreme Court of New Mexico in El Capitan Land & Cattle Co. v. Lees, 13 N. M. 407, 86 Pac. 924. This was an action brought upon a judgment recovered in Kansas; the ground for attack being false testimony on the trial of the case. The court said that the case of U. S. v. Throckmorton was directly in point and conclusive, and further said:

"It will be observed, that it is not every kind of fraud which constitutes an equitable defense to a suit upon such a judgment, but only such frauds as are 'extrinsic or collateral to the matter tried by the first court.'

"Fraud, in relation to the matter actually tried or so in issue that it might have been tried, is not available as a defense to such a judgment. As to such fraud, the case above referred to, holds, that 'the party is estopped to set up such fraud, because the judgment is the highest evidence and cannot be contradicted.'   *   *   *

"Bearing in mind the law as declared by the authorities above cited, it is clear that the fraud alleged in the answer is not such fraud as would constitute an available defense to the judgment sued on. If Hockett's testimony was false, even to the extent of perjury, it is evident that it was concerning a matter either actually tried or which might have been tried in the action of the Kansas court.    In fact it appears, that the judgment was rendered upon the testimony given by Hockett as to the correctness of the account— which is alleged to have been false—and hence the fraud allleged related to an issue actually tried.

"Counsel for plaintiff in error, contends, that there was fraudulent concealment and collusion as to the settlement which distinguishes this case from those above referred to, but we see no difference in the principle; for if there were such, it was in relation to matters tried in that case or which were within the power of the company to have litigated. The alleged fact that owing to the death of the treasurer of the company who made the settlement, the company was not sufficiently informed to enable it to make this defense until long after judgment was rendered in the Kansas court, does not serve to render it available as a defense or counterclaim in an attack upon a foreign judgment, although it might be available in a direct attack, in a proper case."

In Van Patten v. Boyd, 20 N. M. 250, 150 Pac.

917, there was an attempt to review the decision of the officers of the United States Land Ofifce, on the ground that it was obtained by false testimony. The court said:

"The theory upon which the second defense, and by way of counterclaim proceeds, is that the appellee testified falsely at the hearing upon his application in the United States Land Office at Las Cruces, N. M., relative to certain material facts, which are set out in the counterclaim, and that but for such false testimony, etc., necessarily affecting the judgment of the officers before whom it was given and by whom it was considered, appellant would have received a patent to the land. Appellant does not allege that by reason of any fraud practiced by appellee he was prevented from fully presenting his case to the proper officer, but his claim is based solely upon the ground that perjured testimony was given by appellee. The courts generally hold that the decision of the proper officers of the Land Department on questions of fact in a contest is conclusive on the courts and, in the absence of fraud in preventing a party from presenting his case, or fraud practiced by the officers of the Department, the decision is not subject to review by the courts by a charge of perjury against witnesses. This must necessarily be the correct rule, otherwise the losing party in such a contest would, in most cases, be able to secure a review in the courts, because he could secure the same by an allegation that the successful party had been guilty of perjury. In all these cases there is usually a conflict in the testimony, and the unsuccessful party, honestly no doubt, entertains the belief that the successful party has employed perjured testimony. This question, however, is settled by decisions of the Supreme Court of the United States, and requires no further discussion, save a reference to the decided cases."

The court then cites the Throckmorton Case and the other federal decisions.

In view of these decisions it is idle to review at length the authorities from other states. It is sufficient to say that, with very few exceptions, they support the rule adopted here. Many of them may be found in Boring v. Ott, 138 Wis. 260, 119 N. W. 865, 19 L. R. A. (N. S.) 1080, and in the notes in 10 L. R. A. (N. S.) 216, and L. R. A. 1917B, 429.

In obedience to the controlling legal principles,

and following our previous decisions, we hold that the district court was correct in deciding that the perjury committed on the trial of the original case was not of itself alone, and under the circumstances here alleged, sufficient to require the vacating of the judgment.

The judgment of the trial court is therefore affirmed; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.