873 P.2d 238

Ray SWINNEY, Plaintiff–Appellant,

v.

DEMING BOARD OF EDUCATION,
Defendant–Appellee.

No. 20996.

Supreme Court of New Mexico.

March 29, 1994.

Rehearing Denied April 20, 1994.

Jeffrey J. Buckels, Albuquerque, for appellant.

Kevin M. Brown and Elizabeth L. German, Albuquerque, for appellee.

## OPINION

FRANCHINI, Justice.

Ray Swinney appeals from an order of dismissal for failure to state a claim upon which relief may be granted. Swinney served as Superintendent of Schools in Deming, New Mexico, District No. 1, of the Deming Board of Education (Board) under a contract of employment. Swinney alleged that in connection with the Board's decision to terminate his employment contract, certain terms of the contract were breached. The Board filed a motion to dismiss and the trial court granted the motion on the grounds that Swinney was terminated and not discharged, and therefore, the regulation relied on in his complaint did not apply to him. In addition, the trial court stated that Swinney's allegations were based, not on a valid written contract, but instead, on an implied contract, and that therefore the Board was immune from suit under NMSA 1978, Section 37–1–23(A) (Repl.Pamp.1990). We affirm the trial court's dismissal of this case, in part for different reasons. *See Jaramillo v. Jaramillo*, 113 N.M. 57, 62, 823 P.2d 299, 304 (1991) (holding that "[a] lower court's decision will be affirmed on review if that decision was correct, even though the court may have used an incorrect rationale in arriving at its result").

## I.

■ On reviewing a ruling on a motion to dismiss we will assume as true all facts well pleaded and question whether plaintiff may prevail under any state of facts provable under the claim. *DeBaca, Inc. v. Montoya,* 91 N.M. 419, 420, 575 P.2d 603, 604 (1978). On January 15, 1991, the Board voted not to renew Swinney's employment contract for the 1991–92 school year because of unsatisfactory work performance. Swinney continued until May, 1991, at which time he was placed on administrative leave. Swinney identified three sources of his contractual rights which he contends entitled him to an opportunity to correct alleged unsatisfactory work performance, receive written notice of the reasons for his termination, and participate in a hearing at which the merits of his termination would be decided. They were NMSA 1978, Section 22–10–14 (Repl. Pamp.1993), the Deming Public School's Official Manual (Manual), and State Board of Education Regulation No. 89–1 (January 18, 1989).

Before examining the contractual rights that Swinney contends entitle him to notice and a hearing, we first look at the different treatment afforded teachers and administrators in our statutes and case law. School administrators may have employment contracts of one or two years. NMSA 1978, § 22–10–11(B)(4) (Repl.Pamp.1993). A person employed by such contract has no legitimate expectation of reemployment, and no contract shall be construed as "an implied promise of continued employment pursuant to a subsequent contract." Section 22–10–11(E). While certified school instructors have certain rights under our statutory scheme, administrators have no tenure rights as administrators. *See id.;* NMSA 1978, §§ 22–10–12 to –16 (Repl.Pamp.1993); *see also Atencio v. Board of Educ. of Penasco Indep. Sch. Dist.,* 99 N.M. 168, 169–70, 655 P.2d 1012, 1013–14 (1982) (surmising that previously tenured school instructor lost tenure rights when reemployed as a certified school administrator); *Hayden v. Lee,* 90 N.M. 272, 273, 562 P.2d 833, 834 (1977) (holding that administrators are neither tenured nor non-tenured). Section 22–10–14 provides

that only certified school instructors with three or more years of service are entitled to procedural due process following notice of termination. There is no similar protection provided to administrators that are terminated.

Nor do we interpret, as Swinney contends, the amendment of Section 22–10–16 after *Atencio* to expand the scope of Section 22–10–14 to include administrators. Section 22–10–16 currently exempts three categories of individuals from the provisions of Section 22–10–14. All of these categories include individuals who are teachers who might otherwise be determined to be "certified school instructors" within the meaning of various provisions of the School Personnel Act, NMSA 1978, §§ 22–10–1 to –26 (Repl. Pamp.1993). Section 22–10–16 exempts persons not holding a standard certificate, certified school instructors hired to replace certified school instructors that entered military service, and persons who are not qualified to teach. The exemption eliminated after *Atencio* was for "a certified school instructor who is also a certified school administrator and who is required to spend more than one-half of his employment time in administrative functions." NMSA 1978, Section 22–10–16(B) (Supp.1983) (amended 1983). Thus, as in the other exemptions, we are dealing with individuals who are teachers. Eliminating this exemption does not indicate an intent by the legislature to grant administrators the termination procedures accorded to tenured certified school instructors by Section 22–10–14. If they had such intention surely they would have amended Section 22–10–14 to include by its terms both "school instructors" and "administrators" as is the case in other provisions of the School Personnel Act.

■ For purposes of the motion to dismiss we assume that the Manual applies to and is incorporated into Swinney's employment contract. Swinney contends that the Manual in effect at the time of his termination provided in express terms that no personnel could be terminated except for uncorrected unsatisfactory work performance or insubordination. It provided further that before anyone is terminated, they must receive written notification of the reasons for the termination and

a hearing before the Board in order to determine whether good cause existed for the termination.

The Manual states that the *"Scope and Purpose"* of the Board's reemployment and termination policy is "intended to cover decisions by the Deming Board of Education to reemploy or terminate school personnel when their existing contracts expire. [The Board's] purpose is to ensure that any decisions to terminate such employees comply with Section 22–10–14 NMSA as amended, 1978."

The Manual, as applied to Swinney, requiring that the employee be given the opportunity to correct his deficiencies, amounts to de facto tenure for administrators. As we discussed above, this is in direct conflict with the School Personnel Act, which provides nontenured employees with no expectation of continued employment.

■ Local school boards are creations of our legislature. *See* NMSA 1978, §§ 22–5–1 to –12 (Repl.Pamp.1993). A local school board has only limited authority to promulgate policies and enter into contracts. *See* Section 22–5–4. Any attempt by a local school board to enter into a contract or formulate a policy that violates the specific statutory provisions governing it is ultra vires and void. *See Gragg v. Unified Sch. Dist. No. 287*, 6 Kan.App.2d 152, 627 P.2d 335, 339 (1981). We agree with the following statement in *Gragg:* "A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication." *Id.* 627 P.2d at 338 (quoting *Wichita Pub. Sch. Employees Union v. Smith*, 194 Kan. 2, 397 P.2d 357, 359 (1964)).

Any attempt by the Board to enter into a contract or promulgate a termination policy giving an employee rights in conflict with the School Personnel Act would be ultra vires and void. We must therefore hold that Swinney had no contractual right to continued employment or tenure. Consequently the tenure procedures set out in the Manual do not apply to administrators.

Swinney's allegation that Regulation 89–1 provides him additional rights under his contract, either on its own or as part of the Manual, is also unfounded. Regulation 89–1 specifically relates to discharge of an employee. "Discharge" is defined in Section 22–10–2(A) as "the act of severing the employment relationship with an employee prior to the expiration of the current employment contract[.]" "Terminate," on the other hand, is defined in Subsection D of the same statute as "the act of not reemploying an employee for the ensuing school year[.]" Regulation 89–1 is inapplicable to Swinney because he was terminated and not discharged.

Swinney's employment contract did not entitle him to a renewal of employment or an opportunity to correct unsatisfactory work performance. For all the above reasons, we affirm the trial court's dismissal of this case.

IT IS SO ORDERED.

BACA and FROST, JJ., concur.

RANSOM, J., specially concurs.

MONTGOMERY, C.J., dissents.

RANSOM, Justice (specially concurring).

I concur that the rights of Swinney are encompassed in an express written contract. Governmental immunity is a false issue. Also, State Department of Education Regulation 89–1 is applicable only to "discharge" and I consequently do not see that the specific notice, opportunity to correct performance, and hearing provisions of that regulation are impliedly made applicable to administrative personnel in regard to "termination." Despite the fact I am at odds with the majority of this Court in my belief that there is an ambiguity in the employment contract that should have foreclosed dismissal on the pleadings, I can specially concur in the result of the Court's opinion. While an administrator does not have a termination-for-good-cause-only expectancy, I see no reason why an administrator may not contract for the right to notice and an airing of the termination decision. I do not agree that the contractual grant of such a right would be ultra vires and void. Subsection (B) of Section (C)(17) of the Official Manual, however,

by specific reference to NMSA 1978, Section 22-10-14 (termination of *certified school instructors*), makes ambiguous whether notice of "reason for termination and procedures for appeal" are applicable to the administrative employees included within "all school personnel." Because of the reference to Section 22-10-14, I am inclined to resolve the ambiguity by limiting the termination-for-good-cause-only *and* the procedural provisions of Subsection (B) to certified school instructors. Section 22-10-11(E) and those that follow show that the parties did not intend for a termination-for-good-cause-only limit on termination of administrative personnel, and I believe the notice and hearing provisions of Subsection (B)(3) deal with the certified school instructors to which the termination-for-good-cause-only provisions are limited.

MONTGOMERY, Chief Justice (dissenting).

It is important to note, first, that the trial court dismissed Swinney's complaint under Rule 12(B)(6) for failure to state a claim upon which relief could be granted, based on two grounds: First, that State Board of Education Regulation No. 89-1, relied on in part in Swinney's complaint, did not apply to his termination (i.e., nonrenewal of his contract) because the regulation related only to the *discharge* (as that term is defined in Section 22-10-2(A)) of school employees, not to their termination. I agree with this point; but, as the majority opinion notes, Regulation No. 89-1 was only one of the bases for the claim asserted in Swinney's complaint. The others were a statute (Section 22-10-14) and—I would say primarily—the School Board's Official Manual. Like the regulation, the statute is inapplicable to Swinney's claim, because it relates entirely to termination of "certified school instructors"—a category of school employees into which Swinney clearly did not fall.

This leaves the Official Manual, which Swinney alleged was incorporated into his written contract and which, he claimed, provided him with certain protections, such as termination only for uncorrected unsatisfactory work performance or insubordination, written notification of the reasons for termi-

nation, and a hearing before the Board in order to determine whether good cause existed for termination. The trial court dismissed this claim on the ground that Swinney was alleging only an implied contract and that sovereign immunity was not waived for implied contracts, citing Section 37-1-23(A). That statute makes unenforceable *unwritten* contracts (not implied ones) with a governmental entity, and I would hold that where the operative terms of a contract (even though "implied") are all written, Section 37-1-23(A) does not apply.

The majority avoids dealing with the sovereign-immunity statute altogether and instead relies on a ground not asserted by the defendant (and not discussed by any of the parties to this appeal)—that a contract between a school board and an administrator purporting to give the administrator rights such as those claimed by Swinney is beyond the board's power—i.e., is "ultra vires" and therefore void. I respectfully disagree.

There are two critical portions of the majority opinion that I believe are erroneous. The first is the portion stating that the provisions in the Manual on which Swinney relies amount to a grant of "de facto tenure" for a certified school administrator and that this is in direct conflict with the School Personnel Act. The specific reference is to Section 22-10-11(E), which provides that a person employed by contract has no legitimate objective expectancy of reemployment and that no such contract shall be construed as an implied promise of continued employment. The statute does *not* say that a school board cannot by contract provide a certified school administrator with a "legitimate expectancy" of reemployment by obligating itself to follow certain procedures in connection with termination of an administrator's contract. Thus, I do not see that the Manual's alleged promise to afford employees of the School Board specified procedures in connection with termination of their contracts is "in direct conflict" with the statute.

The Manual provides that any school employee with three or more years of experience shall be provided notice of termination in writing and that such notice must include the reasons for termination and the proce-

dures for appeal in the event the employee wishes to contest the termination. (Swinney alleged that he had been employed by the Board for a period of more than three years.) This may amount to "de facto tenure," but I do not see why the Board cannot obligate itself to follow these procedures—perhaps as an inducement to certified school administrators to accept employment with the school district, or perhaps out of the simple notion that certified school administrators should be treated similarly to certified school instructors, even though state law does not *require* such similarity in treatment.

This brings me to the second part of the opinion that I believe is crucial and with which I disagree. That is the statement: "Any attempt by the Board to enter into a contract or promulgate a termination policy giving an employee rights in conflict with [or, I would say, broader than] the School Personnel Act would be ultra vires and void." While I agree that "A local school board has only limited authority to promulgate policies and enter into contracts," I do not agree that the Board's extension of "de facto tenure" rights to certified school administrators like Swinney, by means of an employment contract and an official policy manual, exceeds the Board's statutory authority. As the opinion notes, the powers and duties of local school boards are listed in Section 22–5–4. School boards have the power, subject to regulations of the State Board of Education, to supervise and control all public schools within the school district, § 22–5–4(A); to employ a superintendent of schools for the school district and fix his or her salary, § 22–5–4(B); to approve or disapprove the employment, termination, or discharge of all employees and certified personnel of the school district, § 22–5–4(D); and to contract, lease, purchase, and sell for the school district, § 22–5–4(G). The source of the Board's power and authority to enter into a contract with its superintendent, allowing procedures upon termination similar to those contained in Section 22–10–14, is these subsections of the statute. The statute (Section 22–5–4) certainly does not state that a local school board has no authority to include such provisions in an employment contract with its superintendent of schools. In the absence of an explicit limitation on the authority of local school boards to grant, by contract, school administrators greater process upon termination than that afforded by statute, I cannot agree with the majority that such action is ultra vires.

I might agree with the position taken by Justice Ransom in his special concurrence that the references to Section 22–10–14 in the Manual create an ambiguity; but this is a reason to deny, not grant, the Board's motion to dismiss the complaint for failure to state a claim. If indeed the Manual contains an ambiguity on this point, the motion to dismiss should be denied and the case should proceed to an evidentiary hearing to resolve the ambiguity. *See Mark V v. Mellekas,* 114 N.M. 778, 782, 845 P.2d 1232, 1236 (1993). But I am inclined to believe that the Manual, fairly read, is really not ambiguous. It provides, under the heading "*Statement of Policy*":

> The Board is committed to providing the best qualified personnel and will strive continually to improve the quality of education the district delivers. Similarly, it is in the best interest of the school district to hire and retain the best qualified personnel possible, and the district recognizes that to do so all personnel must be treated professionally and fairly.

Immediately above this "Statement of Policy" is a paragraph dealing with "*Scope and Purpose*" and saying that "This policy is intended to cover decisions by the Deming Board of Education to reemploy or terminate school personnel when their existing contracts expire. Our purpose is to ensure that any decisions to terminate such employees comply with Section 22–10–14 NMSA as amended, 1978." In view of the consistent use in the Manual of the terms "school personnel" and "school employees"—instead of, for example, distinguishing between certified school instructors and other employees—it seems clear that the Board intended to extend the procedures listed in Section 22–10–14 to all employees, including school administrators like Swinney, as a matter of *contract,* even though it was not required by *statute* to do so.

There is a certain magic to the word "tenure," which suggests that it is available only in an academic setting and only to teachers or other faculty members of an educational institution. And there are reasons why the law may provide tenure to instructors and not provide it to other employees, such as administrators, within an academic community. Those reasons have to do with the public policy favoring academic freedom—to provide a measure of job security to instructors, who might otherwise hesitate to advocate, or teach, unpopular positions or theories for fear of losing their jobs. Thus, a statutory scheme that provides tenure to "certified school instructors" makes perfectly good sense to me. At the same time, I can see no reason to deny to a school board the power to provide job security to other employees engaged to assist the board in carrying out its academic responsibilities. I can see no reason to disable a board from contractually extending job security, of the type Swinney alleged in his complaint the Board had granted him in his contract, to administrators in order to induce qualified candidates to accept employment and to continue that employment once accepted.

For these reasons, I would hold that Swinney's complaint stated a cause of action and that the trial court erred in dismissing it.