927 P.2d 23

Idamaye N. SANDERS, Plaintiff–
Appellant,

v.

ESTATE OF Truman T. SANDERS,
Defendant–Appellee.

No. 16134.

Court of Appeals of New Mexico.

July 24, 1996.

Certiorari Denied Oct. 10, 1996.

Stephen P. Eaton, Charles G. Berry &
Associates, P.A., Albuquerque, for Plaintiff–
Appellant.

Richard L. Kraft, Sanders, Bruin, Coll & Worley, P.A., Roswell, for Defendant–Appellee.

## OPINION

BUSTAMANTE, Judge.

1. This case presents interesting questions regarding the interplay between the strong interest embodied in the notion of finality of judgments and the quest to achieve justice between parties. We discuss independent actions in equity seeking relief from judgment, motions to set aside judgments under NMRA 1996, 1–060(B) [hereinafter Rule 60(B)], and res judicata. Assuming, but not deciding, that New Mexico would recognize independent actions to set aside judgments, and that Plaintiff's complaint was sufficient to state a claim upon which relief could be granted, we nonetheless hold summary judgment was appropriate in favor of the appellee. We further hold that Rule 60(B) motions must normally be filed in the original cause of action in the same court in which the challenged judgment was rendered and may not be relied upon to launch a collateral attack in a different cause of action or a different court.

2. *Proceedings below.* Appellant Idamaye Sanders (Idamaye) filed her first "Complaint to Recover Property" in the Fifth Judicial District, Chaves County, on December 2, 1993. The complaint sought under Rule 60(B) to set aside a property settlement agreement that was merged into a divorce decree dissolving her marriage to Truman Sanders (Truman).[1] The original decree was issued by the Twelfth Judicial District Court, Lincoln County, on February 5, 1990. An amended decree was filed on March 9, 1990. Idamaye's 1993 complaint alleged generally that Truman misrepresented to her the extent and value of certain community assets, in particular certain mineral interests, which Truman received in the settlement. In the 1990 settlement agreement, Idamaye agreed to relinquish her interest in the parties' community property in exchange for tax-free bonds of significant value, plus cash, the fam-

ily residence and furnishings, certain artwork, an automobile, health insurance coverage, and all bonds, funds, and accounts in her name. Truman received "all of the remaining assets owned by . . . the parties," which the parties did not describe in the agreement. As a term of the settlement agreement, Idamaye made "no claim whatsoever to any real or personal property or any oil, gas, or mineral interest owned in partnership or otherwise . . . by . . . the parties."

3. Truman did not answer the complaint, choosing instead to file a motion to dismiss asserting that the complaint did not state a claim upon which relief could be granted and that Rule 60(B) relief could only be sought in the Twelfth Judicial District. After hearing Truman's motion to dismiss, the trial court allowed Idamaye to amend her complaint and eventually allowed the filing of a third amended complaint that asserted the right to set aside the decree in eight separate counts, including: (1) "exceptional circumstances" under Rule 60(B)(6); (2) fraud on the court under Rule 60(B)(6); (3) fraud; (4) breach of fiduciary duties; (5) negligent misrepresentation; (6) fraudulent inducement to enter the settlement agreement; (7) intimidation and coercion causing Idamaye to execute the settlement agreement; and (8) breach of contract by failure to deliver Idamaye's full interest in the marital estate. Idamaye also sought punitive damages. The factual allegations supporting the legal theories were as follows:

5. All during the marriage of the parties, Defendant was dominant, made all important decisions, controlled the financial and legal affairs, and kept the financial and legal records of the parties, thereby keeping Plaintiff generally uninformed as to their financial condition, so that Plaintiff was totally reliant upon Defendant to make all financial decisions and provide for their financial needs. Defendant kept the financial and legal records of the parties at his law office or elsewhere so that they were unavailable to Plaintiff.

1. Truman passed away during the pendency of this appeal, and his estate has been substituted as the party in interest.

6. At all times material, Plaintiff totally trusted and relied upon Defendant, and it was the custom and practice of the parties that, whenever it was necessary for Plaintiff to execute documents in order for Defendant to accomplish financial transactions, she would do so upon his direction without reading them.

7. Because of the dominant position enjoyed by Defendant and the trust and reliance reposed in him as husband and attorney by Plaintiff, at all times herein material, a fiduciary relationship existed between the parties.

8. On or about January 22, 1990, Defendant surprised and shocked Plaintiff by advising her that he wanted a divorce. Thereafter, within a few days, Defendant presented the divorce papers to Plaintiff for her signature, telling her that the papers provided for a fair division of the marital property. Defendant told Plaintiff that she could have a lawyer to represent her but that she did not need one because he would take care of everything for her. In reliance upon such representations by Defendant, Plaintiff did not seek or secure independent counsel or advice relating to her rights or the extent and value of the marital estate.

9. At no time did Defendant make a full and complete disclosure of the extent and nature of the marital property. On the contrary, when Plaintiff inquired about some mineral wells about which Defendant had told Plaintiff in the past, (Plaintiff is unsure as to whether these were gas or oil wells) Defendant deliberately and intentionally misled Plaintiff, telling her that such wells were "worthless."

10. On Saturday, February 3, 1990, during a meeting at the home of the parties, Defendant coerced and intimidated Plaintiff until she signed the divorce papers presented to her by Defendant. Although he had presented the papers to Plaintiff for her review on one prior occasion, he did not leave a copy with her for review and consideration, but stayed in the room with her on both occasions, continuing to talk to Plaintiff while she was trying to read the documents.

11. Defendant coerced and intimidated Plaintiff by speaking in a demanding and controlling fashion, telling Plaintiff to sign the documents and threatening that, if she did not sign, he would "take everything and go south." Plaintiff was frightened by this threat of Defendant because she understood him to mean he would take all the property and go to Mexico, since he speaks fluent Spanish. Plaintiff believed that Defendant could and would take all the assets and leave her with nothing. The divorce papers were signed by Plaintiff in the home of the parties with no other persons present, then Defendant drove Plaintiff to a mortuary to have her signature acknowledged before a notary public.

12. The following Monday, February 5, 1990, Defendant, acting in his capacity as an attorney and officer of the court, filed the divorce pleadings in the District Court for the Twelfth Judicial District in Carrizozo, New Mexico. On the same day, Defendant, in his capacity as an attorney and officer of the court, presented the final decree to the district judge for signature and represented to the court that the division of the marital property was fair and equitable.

13. By presentation of the divorce decree and property settlement to the court, the Defendant, in his capacity as an officer of the court, directly or impliedly represented to the court that the division of the marital property was fair and equitable, that Defendant did not receive advantage over Plaintiff without fair consideration, that it had been entered into by Plaintiff free of coercion or intimidation after Plaintiff had received full information as to the extent, value and nature of the marital estate, her rights pertaining thereto and competent, impartial advice in deciding whether to accept the settlement, none of which was true.

14. Plaintiff is creditably [sic] informed and believes and therefore alleges that the property settlement agreement was not fair and equitable and that Plaintiff did not receive reasonable consideration for the assets to which she relinquished any right title and interest. Based upon such infor-

mation and belief, Plaintiff further alleges that the property division agreement was not fair and that Defendant concealed substantial assets, misrepresented their reasonable value and otherwise concealed and misrepresented the value of the marital estate so as to acquire a very substantial and unfair advantage over Plaintiff and obtain much more than his fair share of the property.

15. By reason of the fiduciary relationship that existed between the parties, there exists a presumption of fraud and undue influence that the divorce decree and property settlement agreement were improperly obtained and the same should be set aside.

4. In response to the third amended complaint, Truman filed his "Second Motion to Dismiss," asserting grounds similar to his first motion, and asserting that Idamaye had challenged the February, 1990 decree in March, 1990 with the help of independent counsel. Truman attached copies of the "Motion Directed Against Judgment" and the resulting "Amended Decree of Dissolution of Marriage" entered on March 9, 1990.

5. After consideration of the second motion to dismiss and a full briefing of the issues, the trial court dismissed the third amended complaint. The order of dismissal does not indicate whether it was entered pursuant to NMRA 1996, 1–012(B)(6) for failure to state a claim or as a matter of summary judgment under NMRA 1996, 1–056(C).

6. ***Standard of review.*** Because a motion to dismiss addresses only the legal sufficiency of a complaint, both the trial and reviewing courts assume the veracity of all properly pleaded allegations in the complaint. *Swinney v. Deming Bd. of Educ.*, 117 N.M. 492, 493, 873 P.2d 238, 239 (1994). A motion to dismiss may be granted if it is evident that the plaintiff cannot obtain relief under any set of facts alleged under the complaint, *see Anadarko Petroleum Corp. v. Baca*, 117 N.M. 167, 169, 870 P.2d 129, 131 (1994), or if the facts on the face of the complaint clearly support an affirmative defense to the relief sought, *see Universal Life Church v. Coxon*, 105 N.M. 57, 58–59, 728 P.2d 467, 468–69

(1986), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2482, 96 L.Ed.2d 374 (1987).

7. We analyze a motion to dismiss as a motion for summary judgment when evidence outside the pleadings has been considered. NMRA 1–012(C); *Sanchez v. Church of Scientology*, 115 N.M. 660, 664, 857 P.2d 771, 775 (1993). Truman's motion can be read to only request relief under NMRA 1–012(B)(6). However, he also attached the exhibits noted above, and the district court apparently considered them in deciding to dismiss Idamaye's complaint. Accordingly, the motion must be viewed at least partially as a motion for summary judgment. A motion for summary judgment is granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. NMRA 1–056(C).

8. Truman's motions to dismiss assert that Idamaye failed to state a claim on which relief could be granted because her Rule 60(B)(6) claims had to be brought in the same court that entered the judgment; because Idamaye had not alleged sufficient facts to support a claim for fraud upon the court; and because her claims for fraud, misrepresentation, and unfair settlement were barred by res judicata. Truman also argued that New Mexico does not recognize independent actions for relief from judgment and that all fraud claims in this context should be subject to the requirements of Rule 60(B)(3), including its one-year limitations period.

9. With the exception of the portion seeking to assert an independent claim for relief from judgment, Idamaye's complaint is subject to challenge under NMRA 1–012(B)(6). We will apply the motion-to-dismiss standard of review to counts One, Two, Four, Five and Eight of the complaint. We will analyze counts Three, Six and Seven initially to determine if the complaint could have stated a cause of action for independent relief, and then determine if summary judgment was appropriate.

10. ***The independent action for relief from judgment.*** Truman argues that New Mexico does not allow independent actions

for relief from judgment based on fraud separate from Rule 60(B)(3), and cites *Wehrle v. Robison,* 92 N.M. 485, 486–87, 590 P.2d 633, 634–35 (1979) for support. He also argues that to allow such actions would render the limitations period under the rule meaningless.

11. If our decision on the merits was to reverse and remand for further proceedings, we would be obligated to meet Truman's position directly. However, we have determined that summary judgment was appropriate in any event, and it is thus unnecessary to reach and decide the issue. For purposes of this opinion, we will assume that New Mexico does recognize independent actions. In addition, in order to provide context for our decision, we will outline the contours of an independent action and measure Idamaye's complaint against its requirements in light of the evidence before the court.

12. Rule 60(B) appears to contemplate independent actions in clear and unambiguous language: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court." Patterned on the federal version of the rule, this provision has been part of Rule 60(B) since its adoption in New Mexico.

13. The independent action for relief from judgment is a creature of the common law. Federal Rule 60(b)(3) was intended as a refinement of the common-law action, eliminating the common-law distinction between extrinsic and intrinsic fraud. *See* 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2868 (2d ed. 1995) [hereinafter Wright]. However, adoption of Rule 60(B)(3) was not meant to entirely supplant independent actions as recognized at common law either in federal courts or in state courts working under federally patterned rules of civil procedure. *Id.;* 7 James W. Moore, *Moore's Federal Practice* §§ 60.36 to –.40 (2d ed. 1995) [hereinafter Moore]. New Mexico case law has recognized and applied an independent action before adoption of Rule 60(B), *see, e.g., Day v. Trigg,* 27 N.M. 655, 657–60, 204 P. 62, 63–65 (1922); *Kerr v. Southwest Fluorite Co.,*

35 N.M. 232, 294 P. 324 (1930); *Trujillo v. Padilla,* 79 N.M. 245, 442 P.2d 203 (1968) (per curiam) (no reference to Rule 60(B)), and it has been discussed in conjunction with Rule 60(b) once since adoption of the rule. *See Hort v. General Elec. Co.,* 92 N.M. 359, 588 P.2d 560 (Ct.App.1978) (plurality opinion), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1979).

14. *Wehrle* is not to the contrary. *Wehrle* involved a motion filed in the same cause of action under Rule 60(B)(1) more than one year after judgment was entered and seeking relief based upon an alleged mistake. 92 N.M. at 486–87, 590 P.2d at 634–35. As such, it was barred by the one-year limitations period of the Rule. *Id.* Thus, *Wehrle* did not involve an independent action. In dicta, the Court noted that even if Wehrle's claim had been for fraud under Rule 60(B)(6), which has no time limitation except laches, it would be barred by the limitation for fraud under Rule 60(B)(3). *Id.* at 487, 590 P.2d at 635. Understandably, the Court did not discuss whether Wehrle's claim met the requirements for an independent action. It is instructive, however, that the Supreme Court allowed a wife to bring such an action ten years after entry of judgment in *Trujillo,* 79 N.M. at 247, 442 P.2d at 205.

15. Parties filing an independent action for relief from a judgment would bear a heavy burden to allege and provide evidence of five elements:

(1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

Wright, *supra* § 2868, at 397; *see Day,* 27 N.M. at 657–60, 204 P. at 63–65 (discussing requirements for independent action and stating action was available only if the asserted fraud, accident or mistake prevented the claimant from presenting his case, and also requiring plaintiff to present evidence that he could not have discovered the truth by rea-

sonable diligence); *Green v. Hartel–Green,* 761 P.2d 222, 223 (Colo.Ct.App.1988) (applying standard), *cert. denied* (Sept. 12, 1988). Under requirement (5) (the absence of any adequate remedy at law) the party bringing the independent action would as a practical matter have to show that the normal procedures under the enumerated paragraphs of Rule 60(B) are not available; otherwise there would be an adequate remedy at law.

16. The independent action is intended to be used as a "last ditch remedy." Robert Duane Sharp, *Relief From Fraudulent Judgments in the Federal Courts: Motion to Vacate or Independent Action—Opposite Sides of the Same Coin,* 36 Drake L.Rev. 389, 390 (1987) [hereinafter Sharp]. Because only that fraud, accident, or mistake that has prevented a party from fairly litigating an issue may be asserted as a basis for relief in an independent action, the action, where allowed, is much narrower than one under Rule 60(B). The essence of an independent action is that "one party had not had an opportunity to present his claims fully before judgment." Thomas D. Clarke, Comments, *Rule 60(b): Survey and Proposal for General Reform,* 60 Cal.L.Rev. 531, 535 (1972). Independent actions are thus reserved for "exceptional circumstances" and would not render the one-year limitation of Rule 60(B)(3) meaningless.

17. We appreciate the difficulties of proof that would be presented by these actions. However, we do not believe they would be significantly more difficult than the issues faced in other cases alleging fraud. The existence of a judgment does not make proof more difficult. It should simply prompt concomitantly exacting judicial caution. In any event, as observed by the Third Circuit: "[w]e believe truth is more important than the trouble it takes to get it." *Publicker v. Shallcross,* 106 F.2d 949, 952 (3d Cir.1939), *cert. denied,* 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521 (1940).

■ 18. Having outlined the likely elements of the cause of action, assuming it were to still exist in New Mexico, and assuming that Idamaye's complaint on its face alleged facts that could sustain each element, we examine whether the complaint was properly dismissed.

19. The exhibits attached to Truman's second motion demonstrate that Idamaye had previously made the same claims alleged in the 1993 complaint. They show that one month after the divorce Idamaye filed a motion with the assistance of counsel alleging that the agreement should be set aside because she was not represented by an attorney at first and had signed the agreement under duress and threats from Truman and because she "had no idea of the net worth of the parties." As a result of this motion, the parties negotiated the amended agreement, which resulted in entry of the amended decree in March 1990.

20. The 1990 motion and the amended decree also conclusively demonstrate that within one month after entry of the original decree, Idamaye had hired counsel and that her present claims of fraud, duress, and failure to disclose community interests either have been, or could have been, fully litigated by the parties but were instead satisfied through negotiation and an amended agreement. At the time Idamaye signed the *amended* decree, she was represented by counsel and no longer subject to Truman's duress. We must assume she was aware that she was trading her community interest in whatever property the parties owned for a definite amount of property. She was also aware that Truman had not fully disclosed the nature and extent of the community assets. Despite that knowledge, she expressly agreed not to make a claim on any mineral or oil and gas interests. She had an opportunity in 1990 to discover the value of the interests she negotiated away and cannot now claim newly discovered evidence or fraud. Idamaye's claims are barred by res judicata and summary judgment was appropriate. *Cf. Winfield Assoc. v. Stonecipher,* 429 F.2d 1087, 1089–91 (10th Cir.1970) (party who has moved unsuccessfully under Rule 60(B) to vacate a judgment, and who did not appeal the denial of the motion, cannot obtain relief through an independent action in another district); *Locklin v. Switzer Bros.,* 335 F.2d 331, 332 (7th Cir.1964) (holding that denial of post-trial motions and affirmance on appeal

was res judicata to issues in later independent actions), *cert. denied*, 379 U.S. 962, 85 S.Ct. 652, 13 L.Ed.2d 557 (1965).

21. Idamaye asserts that her failure to engage in full discovery in 1990 should be excused because the focus of her efforts then was to enforce her understanding that she would receive bonds of a certain present value rather than simply of a certain face amount. Idamaye's argument must fail. The 1990 motion addressed a broader problem than simply valuation of bonds. In fact, the motion made essentially the same allegations found in the complaint here, albeit in a somewhat truncated form. Given the assertions of the 1990 motion, it cannot be denied that Idamaye and her counsel were at least on notice of a problem with identification of community assets and that the issue could have been addressed fully in 1990. Because it could have been addressed in 1990, free of the undue influence and duress inherent in an uncounseled transaction, it cannot be resurrected now.

■■■ 22. *Motions under Rule 60(B)(6) should normally be filed in the original action.* Citing "exceptional circumstances," Idamaye sought relief under Rule 60(B)(6) in Count One of her complaint. This use of Rule 60(B)(6) was improper as a procedural and substantive matter. Rule 60(B) contemplates two types of procedures to obtain relief from a final judgment: by independent action and by motion. *See* Fed.R.Civ.P. 60(B) advisory committee note (1946 amendment); Sharp, *supra*, at 391. When proceeding by motion under the specific subdivisions of Rule 60(B), the presumption is that the motion must be filed in the district court and in the action in which the judgment was rendered. *United States ex rel. Aigner v. Shaughnessy*, 175 F.2d 211, 212 (2d Cir. 1949); *see generally*, Moore, *supra* § 60.28[1]. We see no reason to deviate from the general rule in this case. The Twelfth Judicial District was obviously available to Idamaye if she chose to pursue her issues there.

23. Idamaye's failure to follow normal practice converted her otherwise run-of-the-mill motion into an improper collateral attack.

"A direct attack on a judgment is an attempt to avoid or correct it in some manner provided by law and in a proceeding instituted for that very purpose, *in the same action and in the same court*.... A collateral attack is an attempt to impeach the judgment by matters dehors the record, in an action other than that in which it was rendered[.]" (Emphasis added.)

*Lucus v. Ruckman*, 59 N.M. 504, 509, 287 P.2d 68, 72 (1955) (quoting 34 C.J. Judgments § 827 at 520), *overruled on other grounds by Kalosha v. Novick*, 84 N.M. 502, 504, 505 P.2d 845, 847 (1973). Under this definition, Idamaye's attack was collateral because it was made in a different action and a different court. It has long been the general rule that

"a judgment is not subject to collateral attack where the court had jurisdiction of the subject matter and of the parties.... [It] is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies in any collateral action or proceeding, except ... for fraud in its procurement." (Citations omitted.)

*Royal Int'l Optical Co. v. Texas State Optical Co.*, 92 N.M. 237, 241, 586 P.2d 318, 322 (Ct.App.) (quoting 46 Am.Jur.2d *Judgments* § 621 (1969) and 49 C.J.S. *Judgments* § 401 (1947)), *cert. denied*, 92 N.M. 260, 586 P.2d 1089 (1978), *and cert. denied*, 442 U.S. 930, 99 S.Ct. 2860, 61 L.Ed.2d 297 (1979).

24. Since rulings under Rule 60(B) must normally be invoked by motion in the court that rendered the judgment, the trial court properly dismissed all claims made pursuant to the Rule. In so holding, we do not address the possibility of invoking Rule 60(B) as a defensive matter to defend against enforcement of a domesticated foreign judgment. *Cf.* Moore, *supra* § 60.28[1], at 60–309; NMSA 1978, §§ 39–4A–1 through 39–4A–6 (Repl.Pamp.1991). Nor do we address the special considerations raised by void judgments. *See* Moore, *supra* § 60.41.

■■ 25. *Idamaye did not state sufficient facts to establish a claim for fraud on the court.* Idamaye asserts that because Truman was a lawyer, his alleged statement

to the trial court that the original settlement agreement was fair constituted fraud on the court. Idamaye compares her factual scenario to the facts in *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds by Standard Oil Co. v. United States*, 429 U.S. 17, 18 n. 2, 97 S.Ct. 31, 31–32 n. 2, 50 L.Ed.2d 21 (1976) (per curiam), in which the Court affirmed the setting aside of a judgment for patent infringement because the party asserting infringement, along with its attorneys, had directly lied to the patent office and to the court of appeals. *Id.* at 246, 64 S.Ct. at 1001. Idamaye's claims are factually distinguishable from those in *Hazel–Atlas Glass Co.,* The fraud alleged here was fraud against Idamaye alone, and did not involve the integrity of process of a state agency or judicial entity. *See id.* at 246, 64 S.Ct. at 1001 (noting that the fraud committed was "far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public. . . ."). *See generally* Moore, *supra* § 60.33, at 572–5B (fraud between parties, without more, is not fraud upon the court). In addition, the record reveals that Truman was represented by counsel when the first decree was presented to the court. Idamaye does not assert that Truman's attorneys engaged with him in an attempt to defraud the judicial system. *Cf. Hazel–Atlas Glass Co.,* 322 U.S. at 245, 64 S.Ct. at 1000–01 (emphasizing that the attorneys actively engaged in the scheme to defraud the court and the patent office).

26. The facts here are also distinguishable from those of *Moya v. Catholic Archdiocese of New Mexico,* 107 N.M. 245, 755 P.2d 583 (1988). In *Moya,* the defendant and his wife lied under oath to the district court when they asserted they had no actual notice of legal proceedings and service of process had not been effective because the papers had blown under (or been hidden under) a couch on the porch where the process server had attached them to a door handle. *Id.* at 246–47, 755 P.2d at 584–85. Arguably because the plaintiff could not rebut a lie of this sort and because on appeal the supreme court had set aside the judgment based solely on this testimony, the Court exercised its equitable powers to reinstate the judgment. *Id.* at 248, 755 P.2d at 586. The lie in *Moya* defeated the normal process of the judicial system and was directed to the Court, not to an adversarial party.

27. ***Idamaye's contract claims are barred.*** Idamaye argues that Truman created and then breached an implied contract to give her a fair share of the community property by telling her that "he would take care of everything for her," but failing to give her half of the mineral interests. As a result of this promise, Idamaye asserts that she did not seek independent counsel before she signed the original agreement. Idamaye also alleges that she signed the agreement because Truman told her if she didn't, "he would take everything and go south." Despite the inconsistency in the two reasons Idamaye gives for signing the agreement, it is uncontroverted that Idamaye *did* later seek independent counsel, that the parties negotiated at arm's length to amend the agreement, and that Idamaye signed a second compromise agreement dividing the community property. It is well settled that a final decree that "incorporates a stipulation between the parties as to property rights is res judicata as to a subsequent action by either party on a claim determined by the prior decree." *Myers v. Olson,* 100 N.M. 745, 749, 676 P.2d 822, 826 (1984) (citing *Hardy v. Bankers Life & Casualty Co.,* 232 F.2d 205 (7th Cir.), *cert. denied,* 351 U.S. 984, 76 S.Ct. 1051, 100 L.Ed. 1498 (1956)); *see also Unser v. Unser,* 86 N.M. 648, 654–55, 526 P.2d 790, 796–97 (1974) (holding that agreement reached at arm's length in regard to final divorce decree was res judicata to later attempt to modify).

28. ***Conclusion.*** The court properly dismissed Idamaye's third amended complaint, and the judgment is affirmed.

29. **IT IS SO ORDERED.**

APODACA, C.J., and BOSSON, J., concur.