**Certiorari Granted, October 10, 2014, No. 34,855**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-103**

**Filing Date: July 15, 2014**

**Docket No. 32,911**

**CAROL RAYOS, a natural parent**
**and next friend of C.H., a minor,**

      **Plaintiff-Appellant,**

**v.**

**STATE OF NEW MEXICO ex rel. NEW**
**MEXICO DEPARTMENT OF CORRECTIONS,**
**ADULT PROBATION AND PAROLE DIVISION,**
**RILEY LOOMIS, JOHN DOES NOS. I and II, and**
**ELIZABETH QUEENER, individually and in their**
**official capacities as employees of the New Mexico**
**Department of Corrections, Adult Probation and**
**Parole Division,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Sarah M. Singleton, District Judge**

English Law Firm
Nancy G. English
Tucumcari, NM

Philip B. Davis
Albuquerque, NM

Martinez, Hart & Thompson, P.C.
F. Michael Hart
Albuquerque, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellant

Jarmie & Associates
Mark D. Standridge
Las Cruces, NM

Jarmie & Associates
Mark D. Jarmie
Matthew D. Bullock
Albuquerque, NM

for Appellees

## OPINION

**VANZI, Judge.**

**{1}** Plaintiff appeals the district court's grant of summary judgment in favor of Defendants, the New Mexico Department of Corrections, Adult Probation and Parole Division (APPD); probation and parole officers, Riley Loomis and John Does I and II; and probation and parole officer and supervisor, Elizabeth Queener (collectively, APPD Defendants). The sole issue presented is whether APPD officers are now considered "law enforcement officers" as that term is defined in the New Mexico Tort Claims Act (the TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2013), for purposes of the TCA's waiver of immunity for certain conduct of law enforcement officers. In its order granting APPD Defendants' motion, the district court stated that it was bound by this Court's holding in *Vigil v. Martinez*, 1992-NMCA-033, ¶ 20, 113 N.M. 714, 832 P.2d 405, that probation and parole officers and their supervisors are not "law enforcement officers" for the purposes of the TCA and dismissed APPD Defendants from the case. Because there is no sufficient legal or factual basis to depart from our holding in *Vigil*, we affirm.

### BACKGROUND

**{2}** Plaintiff is the natural parent and next friend of C.H., her minor daughter. Kenneth Mills is a convicted sex offender with a sixteen-year history of violent crimes. Mills was under the supervision of APPD Defendants from 2004 through 2008, during which time he violated the terms of his probation numerous times by committing new crimes and violating the Sex Offender Registration and Notification Act (SORNA), NMSA 1978, §§ 29-11A-1 to -10 (1995, as amended through 2013), allegedly with little to no consequence. In August 2008, Mills kidnapped C.H. in the middle of the night and repeatedly raped her, leaving C.H. to suffer permanent physical and emotional harm.

**{3}** What Mills did to C.H. should never have happened. In violation of his conditions of probation, Mills was able to be near Plaintiff's home where he had access to C.H. and where he had the opportunity to kidnap and repeatedly rape her. Plaintiff sued APPD Defendants

2

individually and in their official capacities, alleging that, during the four years leading up to the kidnapping and assault, APPD Defendants failed "to properly monitor and supervise Mills, . . . enforce the conditions of his probation, . . . report his probation violations to the [c]ourt, . . . place him on strict probation, . . . place him on GPS or electronic monitoring, . . . maintain personal contact with him, . . . seek and obtain the revocation of his probation, . . . [and] arrest him or cause him to be arrested," and that they "knowingly recommend[ed] Mills for an early unsatisfactory discharge, despite and even because of Mills' history of serious probation violations and his violent criminal history." Plaintiff also alleged that APPD was liable for the negligence of its employees under the doctrine of respondeat superior. In addition, Plaintiff sued the Curry County Board of County Commissioners, the sheriff of Curry County, and other employees of Curry County, individually and in their official capacities, for failing to comply with their duties to investigate, track, report, and register Mills pursuant to SORNA.

**{4}** The district court allowed limited discovery and briefing on the defendants' claims for immunity under the TCA and deferred the other case deadlines. APPD Defendants subsequently filed a motion for summary judgment, asserting that because they are not "law enforcement officers" under the TCA, they are immune from suit. The district court granted that motion and entered final judgment dismissing with prejudice all of Plaintiff's claims against APPD Defendants. Plaintiff timely appealed.

**DISCUSSION**

**Standard of Review**

**{5}** Statutory interpretation is a question of law that we review de novo. *Am. Fed'n of State, Cnty. & Mun. Emps., Council 18 v. City of Albuquerque*, 2013-NMCA-012, ¶ 6, 293 P.3d 943, *cert. quashed*, 2013-NMCERT-008, 309 P.3d 101. "In construing a statute, our charge is to determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. We also review de novo the grant of summary judgment. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA; *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

**The TCA's Waiver of Immunity for Law Enforcement Officers**

**{6}** Our Legislature enacted the TCA in order to provide a mechanism to "compensate those injured by the negligence of public employees and to impose duties of reasonable care[,]" while at the same time limiting "governmental liability so that government should not have the duty to do everything that might be done." *Cobos v. Doña Ana Cnty. Hous. Auth.*, 1998-NMSC-049, ¶ 6, 126 N.M. 418, 970 P.2d 1143 (internal quotation marks and citation omitted). The TCA achieves this purpose by providing immunity from tort liability for governmental entities and public employees acting within the scope of their duties, except as that immunity is waived, as relevant here, by Sections 41-4-5 to -12. *See* § 41-4-4(A); *Armijo v. Dep't of*

*Health & Env't*, 1989-NMCA-043, ¶ 4, 108 N.M. 616, 775 P.2d 1333.

**{7}**     This case focuses on Section 41-4-12 of the TCA, which waives immunity for specified intentional torts, violation of property rights, or deprivation of constitutional rights "caused by law enforcement officers while acting within the scope of their duties." We have previously held that this waiver applies where a "law enforcement officer's negligence . . . cause[s] a third party to commit one of the specified intentional torts." *Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 39, 144 N.M. 314, 187 P.3d 179. The parties do not argue, and we need not reach, the question of whether APPD Defendants were acting within the scope of their duties or whether the crimes Mills committed meet the definition of any of the specified intentional torts because we hold that, under *Vigil*, APPD Defendants are not "law enforcement officers" within the meaning of the TCA.

**{8}**     The crux of the issue is the definition of the term "law enforcement officer." The TCA defines a "law enforcement officer" as

> a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes[.]

Section 41-4-3(D). "Our courts have construed this definition strictly." *Loya v. Gutierrez*, 2014-NMCA-028, ¶ 11, 319 P.3d 656, *cert. granted*, 2014-NMCERT-002, 322 P.3d 1063. Significantly, the statutory provision directs us to determine a public employee's "principal duties *under law*." Section 41-4-3(D) (emphasis added). However, not all duties of public employees are enumerated in a statute or regulation. Accordingly, our cases have also considered such sources as departmental job descriptions and affidavits in determining the duties of public employees. *See Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶¶ 9-10, 121 N.M. 646, 916 P.2d 1313 (considering statutes enumerating duties of municipal police officers, county sheriffs, and law enforcement officers); *Anchondo v. Corr. Dep't*, 1983-NMSC-051, ¶¶ 4-8, 100 N.M. 108, 666 P.2d 1255 (looking to the principal duties of the secretary of corrections and the warden of a county detention center as described by statute to conclude they were not law enforcement officers under the TCA); *Baptiste v. City of Las Cruces*, 1993-NMCA-017, ¶¶ 2, 4, 115 N.M. 178, 848 P.2d 1105 (holding that the written job description alone was insufficient to establish that an animal control officer is a law enforcement officer under the TCA); *Vigil*, 1992-NMCA-033, ¶¶ 11-15 (considering the Probation and Parole Act, written job description, and employee's affidavit in the context of the definition of "law enforcement officer").

**{9}**     The immunity waiver for "law enforcement officers" requires that "the defendants' principal duties, those duties to which they devote a majority of their time, be of a law enforcement nature." *Weinstein*, 1996-NMSC-021, ¶¶ 8, 12. Thus, we must determine the duties upon which the employee spends the majority of his or her time (principal duties) and consider the character of those principal duties "against the admittedly amorphous standard of the duties and activities traditionally performed by law enforcement officers." *Coyazo v. State*,

1995-NMCA-056, ¶ 13, 120 N.M. 47, 897 P.2d 234; *see Weinstein*, 1996-NMSC-021, ¶¶ 8, 12. There is no "exhaustive list of activities that fit within the law enforcement mold." *Coyazo*, 1995-NMCA-056, ¶ 18. Rather, our determination is "informed by a practical, functional approach as to what law enforcement entails today." *Id.* Public employees whose principal duties under law fall within any of the categories enumerated in Section 41-4-3(D) are "law enforcement officers" for the purposes of the TCA. *Limacher v. Spivey*, 2008-NMCA-163, ¶ 9, 145 N.M. 344, 198 P.3d 370.

**APPD Defendants Are Not Law Enforcement Officers**

{10}    In this case, the district court stated that it was bound by this Court's decision in *Vigil* and held that the Defendant probation and parole officers and their supervisor were not law enforcement offices for whom immunity had been waived under the TCA.[1] *See* 1992-NMCA-033, ¶ 20. APPD Defendants rely on *Vigil* as well. We review *Vigil* in some detail. In that case, while he was on supervised probation, a probationer brutally murdered someone by slitting his throat. *Id.* ¶¶ 1-2. The personal representative of the victim's estate sued the probationer's probation officer, her supervisor, and the state director of probation, alleging gross negligence and callous indifference to the supervision of the probationer. *Id.* The district court granted the defendants' motion to dismiss, which in relevant part asserted that the defendants were immune from suit pursuant to the TCA. *Id.* ¶ 1. This Court affirmed, reviewing the motion as one for summary judgment because the defendants had attached and relied largely on an uncontested affidavit from one of the defendants regarding his principal duties and responsibilities and a written job description setting forth the duties of a probation and parole officer and supervisor. *Id.* ¶¶ 14-15. The principal duties of probation and parole officers and their supervisors are not specifically enumerated by statute, so the *Vigil* Court turned to the Probation and Parole Act (the Act) in order to ascertain the chief function of probation and parole officers. *Id.* ¶ 18. In relevant part, the Act provides that persons convicted of crimes " 'shall be dealt with in the community by *a uniformly organized system of constructive rehabilitation* under probation supervision instead of in an institution, or under parole supervision when a period of institutional treatment is deemed essential in the light of the needs of public safety and their own welfare.' " *Id.* (emphasis added) (quoting NMSA 1978, § 31-21-4 (1963)). Thus, this Court determined the chief function of probation and parole officers under the Act is rehabilitation. *Vigil*, 1992-NMCA-033, ¶ 18. In addition, *Vigil* considered the state's job description for probation and parole officers and their supervisors and the employee affidavit and analyzed those duties in light of the law concerning the traditional functions of law enforcement officers. *Id*. ¶¶ 12-20. Based on its review of the law and proffered evidence, this Court decided that (1) "making arrests for crime," (2) "holding in custody persons accused of criminal offenses," and (3) "maintaining public order" do not constitute duties to which probation and parole officers are to devote a majority of their time. *Id.* ¶¶ 16, 20.

---

[1]We note that the parties do not distinguish between the duties of probation and parole officers and probation and parole supervisors. *Vigil* also appears to make no distinction, although its holding encompasses both. Accordingly, we view the principal duties of probation and parole offices and supervisors synonymously for purposes of our analysis in this Opinion.

5

**{11}**    In the more than twenty years since *Vigil* was decided, the New Mexico Legislature has not amended the statute to include probation and parole officers within the definition of law enforcement officers. Moreover, every subsequent state and federal decision—both published and unpublished—on the "law enforcement officer" waiver has followed *Vigil*, albeit with little meaningful analysis or none at all. *See, e.g.*, *Limacher*, 2008-NMCA-163, ¶ 17; *Coyazo*, 1995-NMCA-056, ¶ 17; *Trask v. Franco*, 446 F.3d 1036, 1048 (10th Cir. 2006); *Ricks v. N.M. Adult Prob. & Parole Dep't*, No. CV-11-608, slip op. at 32-33 (D.N.M. Aug. 9, 2012); *Wells v. N.M. Adult Prob. & Parole*, No. CV-09-150, slip op. at 3 (D.N.M. Feb. 5, 2010); *Kenney v. New Mexico*, No. CV-07-0422, slip op. at 8 (D.N.M. Oct. 2, 2007). Against this backdrop, there simply has been no change in the law to warrant a departure from *Vigil. See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305 (noting, in relevant part, that before overturning precedent, we must consider "whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine" and "whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification" (internal quotation marks and citation omitted)). Thus, our sole task here is to determine whether the facts have so changed that the principal duties of probation and parole officers now fall within one of the three relevant categories of principal duties of law enforcement officers enumerated in Section 41-4-3(D) of the TCA.

**{12}**    As to the first category, "making arrests for crime," Plaintiff points to no change in the law and admits that probation and parole officers do not devote the majority of their time to making arrests. *See Vigil*, 1992-NMCA-033, ¶ 19. Consequently, there is no basis for concluding that making arrests for crimes is the principal duty of probation and parole officers. *See Dunn v. State ex rel. Taxation & Revenue Dep't*, 1993-NMCA-059, ¶ 11, 116 N.M. 1, 859 P.2d 469 (holding that the director of the New Mexico Motor Vehicle Department, who has statutory authority to make arrests, was not a law enforcement officer because "the vast majority of [his] time and effort are involved in administrative matters" (internal quotation marks omitted)).

**{13}**    As to the second category, Plaintiff contends that "hold[ing] persons accused of crimes in custody" is a principal duty of probation and parole officers because these officers can "limit where and with whom probationers and parolees can live, work, socialize[,] and travel, have the authority to search their persons and premises, and do, in fact, take physical custody of probationers and parolees who are suspected of committing new crimes or otherwise violating their parole or probation." We rejected a similar argument in *Vigil* and pointed out that probation and parole officers *supervise* probationers and parolees and that they "do not hold their clients in custody within the traditional meaning of the term as applied to law enforcement officers." 1992-NMCA-033, ¶ 17. We also noted that holding persons in custody is a minor incident of probation and parole officers' jobs and that probationers and parolees are not persons "accused" of crimes because they have already been convicted. *Id.*

**{14}**    Plaintiff asserts that *Vigil*'s interpretation of the words "custody" and "accused" is unduly narrow. However, we see no legal basis for reinterpreting those terms more broadly. Indeed, we have limited the definition of law enforcement officers in this category to detention

6

center employees whose principal duties under law are to hold in custody persons accused of a crime while awaiting trial. *See, e.g.*, *Davis v. Bd. of Cnty. Comm'rs of Doña Ana Cnty.*, 1999-NMCA-110, ¶¶ 35, 39, 127 N.M. 785, 987 P.2d 1172 (holding that the director, captain, and assistant director of a detention center are "law enforcement officers"); *Abalos v. Bernalillo Cnty. Dist. Atty's Office*, 1987-NMCA-026, ¶¶ 26-29, 105 N.M. 554, 734 P.2d 794 (same). And, while Plaintiff cites some evidence that probation and parole officers are authorized and sometimes required to arrest and hold in physical custody probationers and parolees under their supervision who are "accused" of committing new crimes, that evidence does not establish that these are duties to which probation and parole officers now dedicate a majority of their time, as required for the "principal duty" determination.

**{15}**    This leaves the "maintaining public order" category, as to which Plaintiff makes several arguments. First, in an apparent effort to circumvent *Vigil*'s conclusion that the principal duty of probation and parole officers is rehabilitation, not maintaining public order, *see* 1992-NMCA-033, ¶ 18, Plaintiff contends that rehabilitation should be considered a traditional law enforcement duty because it is, in fact, a means of preventing crime, preserving public safety, and maintaining public order. *Vigil* addressed this point, explaining that, "[i]nsofar as probation and parole officers maintain public order by trying to rehabilitate their clients, they are not maintaining public order in the same sense [as] police officers, sheriff's deputies, and other traditional law enforcement officers" and that, "[a]lthough one would hope that the efforts of probation and parole officers would improve public order by helping probationers and parolees to become good citizens, the same could be said of the efforts of those employed in education and social services." *Id.*

**{16}**    Plaintiff argues that it does not matter how probation and parole officers pursue crime prevention and maintaining public order because, like police officers, their primary mission is protecting public safety and the TCA's purpose is to impose liability on public employees whenever public safety is implicated. We are not persuaded by Plaintiff's argument. Since *Vigil*, we have consistently reaffirmed that, to fall within the "maintain[ing] public order" category, a public employee's principal duties must be duties traditionally performed by law enforcement officers that directly impact public order. *See Dunn v. McFeeley*, 1999-NMCA-084, ¶ 25, 127 N.M. 513, 984 P.2d 760 ("In interpreting the [TCA] our appellate courts have repeatedly found that a connection to law enforcement activity, even being a member of a law-enforcement team, is insufficient by itself to make one a law enforcement officer; *the person's duties must directly impact public order*." (emphasis added)); *Limacher*, 2008-NMCA-163, ¶ 23 (reiterating that "for an employee to fall within the exception for maintaining public order, that person's duties must be *traditional law enforcement duties that directly impact public order*" (emphasis added)); *Baptiste*, 1993-NMCA-017, ¶ 9 ("[I]nsofar as a duty of [a public employee] involves maintaining public order, is the duty one traditionally performed by law enforcement officers? If the duty [of a public employee] is not a traditional duty of law enforcement officers, it does not come within the meaning of 'maintaining public order' in the statutory definition of 'law enforcement officer.' ").

**{17}**    Thus, we can only conclude that rehabilitation falls within the category of "maintaining public order" if it is now a duty traditionally performed by law enforcement that directly

impacts public order. *See Limacher*, 2008-NMCA-163, ¶ 23. And we have no basis for doing so. While Plaintiff asserts that police officers, sheriff's deputies, jailers, and other public employees recognized as "law enforcement officers" under the TCA engage in rehabilitative tasks, such as counseling, she proffers no evidence on the point, and the argument fails. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("[A]rguments of counsel are not evidence.").

**{18}**     Plaintiff next contends that probation and parole officers are peace officers with certain powers and that they engage in activities similar to those of traditional law enforcement officers. In support of this argument, she cites a statute that gives corrections officers, including probation and parole officers, certain powers of peace officers and other statutes that grant certain powers and impose certain duties on peace officers. *See* NMSA 1978, § 33-1-10(A), (C) (1987) (giving corrections employees, including probation and parole officers performing certain duties, powers of peace officers); NMSA 1978, § 30-1-12(C) (1963) (defining "peace officer" for purposes of the Criminal Code); NMSA 1978, § 29-1-1 (1979) (requiring peace officers to investigate any violations of criminal law of which they are aware); NMSA 1978, § 30-7-2(A)(3) (2001) (exempting certified peace officers from the crime of unlawful carrying of a firearm). *Vigil* specifically considered and rejected the contention that Section 33-1-10, which gives probation and parole officers certain powers of peace officers, establishes that a probation and parole officer is a "law enforcement officer." 1992-NMCA-033, ¶¶ 13, 17-19. That statute has not since been amended, and the other statutes cited by Plaintiff provide no basis for a conclusion different from that reached in *Vigil*.

**{19}**     Significantly, rehabilitation remains the principal duty of probation and parole officers *under law*. Plaintiff does not argue otherwise, nor could she. The Legislature has not amended the provision of the Act upon which *Vigil* relied, stating that probationers and parolees "shall be dealt with in the community by a uniformly organized system of constructive rehabilitation" under probation or parole supervision. Section 31-21-4. And our Supreme Court, although it has done so in different contexts, has continued to recognize rehabilitation as the primary goal of probation and parole. *See, e.g.*, *State v. Lopez*, 2007-NMSC-011, ¶ 8, 141 N.M. 293, 154 P.3d 668 ("The Legislature has granted district courts the power to revoke probation when a probation condition is violated because rehabilitation, which is the primary goal, is not being achieved."); *State v. Rivera*, 2004-NMSC-001, ¶ 24, 134 N.M. 768, 82 P.3d 939 ("The primary goal of probation, which is defendant rehabilitation, may be defeated by delaying the commencement of a defendant's probationary sentence pending appeal.").

**{20}**     We are also not persuaded by Plaintiff's argument that probation and parole officers have other duties, such as monitoring, investigating, detaining, searching, and holding in custody offenders not abiding by the conditions of their parole or probation, arresting violators, and restraining and holding in custody persons who attempt to interfere, all of which constitute traditional law enforcement activities. She cites evidence of an overlap in the training of sheriff's deputies and probation officers, including making arrests and use of weapons, force, and defensive tactics; certain physical requirements for probation and parole officers, including the ability to use restraints, mace, and custody control techniques; that probation and parole officers carry less-than-deadly weapons; and that probation and parole officers are now

8

authorized to carry firearms but were not so authorized when *Vigil* was decided. She also offers evidence that New Mexico Corrections Department policies and procedures deal extensively with the arrest power of probation and parole officers and their collaboration with other peace and law enforcement officers to make arrests, that probation and parole officers self-identify as peace officers, that they can or must arrest or cause to be arrested probationers or parolees suspected of engaging in criminal activity, and that they are sometimes responsible for holding those persons in custody.

**{21}** At most, this information suggests that probation and parole officers have certain responsibilities and engage in certain activities that may fall within the category of "maintaining public order." *See Vigil*, 1992-NMCA-033, ¶ 18. But the only thing Plaintiff cites as having actually changed since *Vigil* is that probation and parole officers are now authorized—although not required—to carry firearms in the field, and this does not establish that the principal duty of probation and parole officers has changed from rehabilitation, or that these officers now dedicate a majority of their time to performing traditional law enforcement duties that directly impact public order. *See Limacher*, 2008-NMCA-163, ¶ 12 (observing that our case law "clearly distinguish[es] powers from the duty to use them").

**{22}** We also reject Plaintiff's assertion that probation and parole officers, who specifically supervise dangerous, repeat sex offenders are law enforcement officers because their "activities would appear to be entirely driven by the goal of maintaining public safety and order, and [are] indistinguishable from traditional law enforcement activities." Here, Plaintiff cites the post-*Vigil* enactment of SORNA, which is based, in part, on the Legislature's finding that "sex offenders pose a significant risk of recidivism[.]" Section 29-11A-2(A)(1). SORNA "assist[s] law enforcement agencies' efforts to protect their communities" by creating registration requirements and public access to information regarding certain registered sex offenders. Section 29-11A-2(B). But nothing in SORNA mentions probation and parole officers; indeed, SORNA "places the responsibility of gathering information and enforcing the registration requirements on county sheriffs." *State v. Burke*, 2008-NMSC-052, ¶ 1, 144 N.M. 772, 192 P.3d 767; *see* § 29-11A-2(B)(1), (2). Nor does Plaintiff cite any APPD policy or procedure, or anything else, that imposes SORNA duties on probation and parole officers.

**{23}** We are aware that recent amendments to certain statutes impose more stringent requirements for the length and terms and conditions of probation and parole specifically for sex offenders and that, as a result, probation and parole officers are tasked with supervising sex offenders for longer periods of time and with additional oversight requirements as compared to other offenders. *Compare* NMSA 1978, § 31-21-10(D) (2009), *with* NMSA 1978, § 31-21-10.1 (2007), *and* NMSA 1978, § 31-20-5.2 (2003).[2] However, nothing in the summary

---

[2] For instance, rather than the two-year period of supervised parole that persons generally convicted of first, second, or third degree felonies must serve, § 31-21-10(D), sex offenders must serve a minimum of five years, and up to the duration of the sex offender's life, § 31-21-10.1(A). Similarly, sex offenders must serve a minimum of five years and a maximum of twenty years of probation. Section 31-20-5.2. The parole board is also tasked with additional oversight requirements for sex offenders. *See* § 31-21-10.1(B)-(F). And the board must

9

judgment record distinguishes between the principal duties of probation and parole officers who supervise sex offenders and those who supervise other kinds of offenders.

**{24}** Finally, much of Plaintiff's argument rests on her assertion that *Vigil* was wrongly decided because it was based on an overly narrow interpretation of the TCA's waiver of immunity for "law enforcement officers" and an incomplete record. We think otherwise. The case law is clear that the law enforcement waiver is strictly construed. *Loya*, 2014-NMCA-028, ¶ 11. Moreover, *Vigil* was decided on summary judgment, based on evidence the defendants "submitted to the district court three-and-a-half months before the hearing on the motion," and although the plaintiff had ample time to contest that evidence or provide additional evidence, she did not do so. 1992-NMCA-033, ¶ 14.

**{25}** We recognize that the duties of law enforcement officers are subject to change in a changing world and that the analysis of the term "law enforcement officer" under the TCA must account for such changes. *See Coyazo*, 1995-NMCA-056, ¶ 18. It may well be that changing circumstances, such as prison overcrowding and increased use of probation and parole as alternatives to incarceration,[3] the changing demographic of the probation and parole population,[4] and our Legislature's finding that sex offenders have high rates of recidivism have or will have a significant impact on the principal duties of probation and parole officers. As things stand today, however, we have no basis in law or fact sufficient to depart from *Vigil*.

**{26}** The events in this case are tragic, and Mills' alleged conduct was a terrible crime.

---

"require electronic real-time monitoring of every sex offender released on parole for the entire time the sex offender is on parole[,]" which must "give continuous information on the sex offender's whereabouts and enable law enforcement and the corrections department to determine the real-time position of a sex offender to a high level of accuracy." Section 31-21-10.1(E).

[3] Prison "overcrowding has caused a greater reliance on the use of probation as an alternative to imprisonment." Shawn E. Small and Sam Torres, *Arming Probation Officers: Enhancing Public Confidence and Officer Safety*, 65 Fed. Prob. 24, at 25 (2001). According to the Bureau of Justice Statistics, just over three million adults were under state or federal probation at the end of 1995, representing an almost 300 percent increase over the prior ten years. Joan Petersilia, *Probation in the United States Part I*, Perspectives, at 30 (1998). By the end of 2008, that number had grown to almost 4.3 million. *See* Lauren E. Glaze and Thomas P. Bonczar, *Bureau of Justice Statistics Bulletin: Probation and Parole in the United States, 2008*, at 1 (December 2009).

[4] "Since the 1980s, the demographic make-up of the probation population has changed markedly[,]" and "more individuals are being placed on probation for a wider range of criminal offenses." Small and Torres, *supra*, at 25. Consequently, "probation officers are increasingly supervising offenders who are more violent and dangerous." *Id.* For instance, in 2008, over half of the probation population had been convicted for felonies, as opposed to misdemeanors. *See* Glaze and Bonczar, *supra*, at 31.

Although this Court is sympathetic to Plaintiff's plight, based on this record and in light of our holding in *Vigil*, we must hold that the district court did not err when it ruled that APPD Defendants are not law enforcement officers under Section 41-4-3(D) and that, therefore, the waiver of immunity in Section 41-4-12 does not apply to them.

**CONCLUSION**

{27}    We affirm the judgment of the district court.

{28}    **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**JONATHAN B. SUTIN, Judge**

11