**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date:  __**December 14, 2015**__

**NO. 33,982**

**NORTHERN NEW MEXICO FEDERATION**
**OF EDUCATIONAL EMPLOYEES, AN**
**AFFILIATE OF AFT NM, AFT/AFL-CIO,**

 Petitioner-Appellant,

v.

**NORTHERN NEW MEXICO COLLEGE, and**
**NORTHERN NEW MEXICO COLLEGE**
**LABOR MANAGEMENT RELATIONS**
**BOARD,**

 Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Sheri A. Raphaelson, District Judge**

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Appellant

Basham & Basham, P.C.
Mark A. Basham
Santa Fe, NM

Joseph L. Romero Trial Lawyer, LLC
Joseph L. Romero
Santa Fe, NM

for Appellee NNMC

Tony F. Ortiz, Attorney at Law, L.L.C.
Tony F. Ortiz
Santa Fe, NM

for Appellee NNMC Labor Board

**OPINION**

**KENNEDY, Judge.**

{1}     This case involves a complaint filed by the Northern New Mexico Federation of Educational Employees (the Union) against Northern New Mexico Community College (the College) with the Northern New Mexico College Labor Management Relations Board (the Board). The complaint alleged that the College had terminated two employees of the College (Employees) in retaliation for their Union-related activities, which was in violation of the College's labor-management relations resolution (the Resolution) and the governing collective bargaining agreement (CBA). The College responded that it had declined to renew Employees' contracts for legitimate business reasons. In its hearing on the Union's complaint, the Board focused on provisions in the CBA and the employee handbook that were not mentioned in the complaint instead of addressing the complaint's allegations of retaliatory termination. The Board granted the College's motion to dismiss the complaint on the ground that the non-renewal of Employees' contracts was consistent with the employee handbook and not inconsistent with the CBA. Because the Board failed to address the complaint's allegations that the non-renewal was retaliatory and violated the Resolution, we reverse and remand for reinstatement of the Union's

complaint. We make no determination about whether the complaint's allegations of retaliation are true and leave that undertaking to the Board on remand.

**BACKGROUND**

{2}     Employees signed employment contracts with the College for the period from July 1, 2012 to June 30, 2013. The contracts themselves permitted cancellation by the College on several grounds, including cause, lack of funding, a reduction in personnel, or cancellation of the program in which the staff person was employed. These provisions were in accordance with the staff handbook (the Handbook). The Handbook also permitted the president of the College to "choose not to renew the contract of any regular staff employee for any reason or no reason." It is undisputed that Employees were members of the Union and that the Union and the College had entered into a CBA, which included the following provision:

> An employee may be discharged, suspended without pay or terminated only for good and just cause and in the event, shall be notified in writing of the action and reasons therefor[] and shall have the right to file a grievance as provided in Article 11.

In May 2013, the College notified Employees in writing that their contracts, due to expire on June 30, 2013, would not be renewed for the fiscal year 2013-14.

{3}     The Union filed a prohibited practice complaint against the College on behalf of Employees, claiming that they were terminated by the College in violation of the Resolution and the CBA. According to the complaint, the College terminated

Employees "in retaliation for [their] union activities" and then "refused to participate in the arbitration procedure" related to the grievance filed by one of the employees. The College filed an answer in which it admitted that Employees' contracts were not renewed but asserted that the non-renewal was "for legitimate business purposes."

{4} The complaint was heard by the Board, although the record on appeal does not include a transcript of the hearing or the exhibits introduced at the hearing. The Board entered its findings of fact and conclusions of law, in which it granted the College's motion to dismiss the complaint. The Board did not address the complaint's allegations of retaliation at all. Instead, it found that "the College's staff are hired on annual contracts for terms lasting from July 1st to June 30th" and that Employees "were notified in May 2013 that their contracts would not be renewed." The Board then concluded that the non-renewal of Employees' contracts was consistent with the Handbook and that non-renewal of staff contracts was a "retained management right pursuant to the CBA and the . . . Handbook." It further concluded that the CBA's provisions governing the discharge or termination of staff "applie[d] during the term of the staffs' contracts and, as such, there [was] no conflict" between the CBA and the Handbook.

{5} The Union appealed the Board's decision to the district court, which determined that the decision was not erroneous. The district court dismissed the

appeal with prejudice, and this Court granted the Union's petition for writ of certiorari under Rule 12-505 NMRA.

**DISCUSSION**

{6}     On appeal, the parties do not directly address the allegations of retaliation asserted in the Union's complaint. Instead, the Union argues that the Board's decision was arbitrary, capricious, and contrary to law because the CBA controlled the relationship between the College and Employees and prohibited termination of Employees' employment in the absence of just cause. In response, the College contends that there is no conflict between the CBA and the Handbook on the subject of non-renewal and that, under the CBA, the College retained all rights not specifically limited by the CBA. Further and consistent with the decision reached by the Board, the College argues that non-renewal of the staff contracts was not a termination or discharge governed by the CBA.

**Standard of Review**

{7}     "Upon a grant of a petition for writ of certiorari under Rule 12-505, this Court conducts the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *La Vida Llena v. Montoya*, 2013-NMCA-048, ¶ 9, 299 P.3d 456 (alteration, internal quotation marks, and citation omitted). "In conducting our whole

4

record review, we review the record of the administrative hearing to determine whether the board's decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *Id.* (alteration, internal quotation marks, and citation omitted).

**Preliminary Matter**

{8}     Before undertaking our analysis of the merits, we first consider the Union's suggestion that the complaint's allegations must be deemed to be true for purposes of the College's motion to dismiss. The Union specifically contends that we must analyze its appeal in the context of its allegation that the College declined to renew Employees' contracts in retaliation for their union activities. The College responds that, because the Board considered matters outside the pleadings—i.e., the employment contracts, the Handbook, and the CBA—the motion to dismiss was converted to a motion for summary judgment and, therefore, we cannot deem true the complaint's allegations of an impermissible purpose underlying the decision not to renew Employees' contracts. *See* Rule 1-012(B) NMRA (stating that if a party files a motion to dismiss under Rule 1-012(B)(6), and if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment").

{9}     We decline to treat the motion as one for summary judgment. While the Board certainly considered "matters outside the pleadings" in deciding to dismiss the Union's complaint, those matters shed no light on the complaint's allegations that the College's non-renewal of the contracts was retaliatory. Instead, the Board relied on the Handbook and the CBA to determine that the terms of each were not in conflict and that the non-renewal complied with the Handbook's provision that the College's president could decline to renew a staff contract "for any reason or no reason." The Board made no determination as to the merits of the complaint's allegations of retaliation. *See Dunn v. McFeeley*, 1999-NMCA-084, ¶ 17, 127 N.M. 513, 984 P.2d 760 (declining to treat a motion to dismiss as a motion for summary judgment, despite the submission of matters outside the pleadings, because it would be unfair to the plaintiff).

{10}     While we agree with the Union that the complaint's allegations of the College's retaliatory motive are central to resolution of the complaint by the Board, we need not indulge the presumption that those allegations are true because the presumption begs the question itself, which is whether the Union was entitled to a hearing on the allegations. The Board failed to address these allegations in any way by its dismissal of the complaint, effectively determining that the Union was not entitled to a hearing

6

on whether the College's motives for non-renewal were retaliatory. We therefore turn to an analysis of whether the Board's determination was proper.

**The Board Improperly Failed to Address the Allegations of the Complaint**

{11}     According to the Union's complaint, its claims of retaliatory discharge are specifically based on the Resolution. Consistent with the Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10-7E-10 to -11 (2003, as amended through 2005), the College adopted the Resolution creating the Board and detailing the provisions governing the College's employer-employee relations. *See* N.N.M. Coll. Labor Mgmt. Relations Resolution, http://nnmc.edu/wordpress//wp-content/uploads/2014/03/NNMC-Labor-Resolution.pdf. (Resolution).[1] Section 16(A) of the Resolution provides:

> A.     A public employer or his representative shall not:
>
> 1)     discriminate against an employee with regard to terms and conditions of employment because of the employee's membership in a labor organization;
>
> . . . .

---

[1] The College maintains that we should not consider the Resolution because it was not part of the record on appeal and the Union cannot show whether the Board relied on the Resolution in making its decision. In our view, the Resolution formed the basis for the Union's complaint, and it is therefore central to the question presented. The Resolution is akin to a municipal ordinance, which our Supreme Court has held is law of which a court may take judicial notice. *City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 16, 147 N.M. 693, 228 P.3d 477.

> 5) discharge or otherwise discriminate against an employee because the employee has signed or filed an affidavit, petition, grievance, or complaint or given any information or testimony under the provisions of the . . . Resolution or because an employee is forming, joining, or choosing to be represented by a labor organization[.]

Resolution, *supra*, at 18. The College's alleged violation of these provisions gave rise to the Union's claims that Employees' employment was wrongfully terminated for retaliatory reasons.

{12} Again, although the complaint focused on the College's alleged violation of the Resolution's provisions quoted above, on appeal the parties focus on the legal question of whether the non-renewal of Employees' contracts constituted a discharge or termination under the CBA. Thus, neither substantially addresses, or factually argues the allegations set forth within the complaint dismissed by the Board. We conclude that we need not decide whether non-renewal constitutes a discharge or termination under the CBA because the non-renewal of the contracts—*if undertaken with the retaliatory impetus alleged by the Union*—would be in conflict with the Resolution, which is the legal document governing the CBA.

{13} We begin our discussion with a review of the law governing the circumstances before us, which is the PEBA. The PEBA was enacted "to guarantee public employees the right to organize and bargain collectively with their employers," Section 10-7E-2, and it provides that public employers and exclusive representatives

8

(i.e., unions) "shall enter into written collective bargaining agreements covering employment relations." Section 10-7E-17(A)(2). The PEBA further states, among other things, that a public employer may "retain all rights not specifically limited by a [CBA] or by the [PEBA]." Section 10-7E-6(D). Thus, the PEBA provides the basic requirements for relations between public employers and union employees.

{14} The PEBA provides that "a public employer other than the state may, by ordinance, resolution or charter amendment, create a local board similar to the public employee labor relations board." Section 10-7E-10(A). A local board created in this fashion "shall follow all procedures and provisions of the [PEBA] unless otherwise approved by the [state public employee labor relations] board." *Id.* Among these provisions is a list of a public employer's "prohibited practices[,]" including a prohibition against "discriminat[ing] against a public employee . . . because of the employee's membership in a labor organization[.]" Section 10-7E-19(A).

{15} As previously mentioned, the College created its own local board pursuant to the Resolution. Taken together, the PEBA and the Resolution provide the legal authority for the College and the Union to bargain collectively and enter into the CBA. *See* Section 10-7E-26(B) (stating that a public employer other than the state, which adopts collective bargaining procedures after October 1, 1991, must include certain provisions and procedures in its implementing document). Importantly, the

9

PEBA required the Resolution to include the PEBA's prohibition against discrimination on the basis of an employee's union membership. *See* Section 10-7E-26(B)(9) (requiring a public employer like the College to include in its implementing document the prohibited practices set out in the PEBA), and the Resolution does indeed include that prohibition.

{16} The issue before us concerns how the Resolution impacts Employees' contracts and the Handbook, which permits non-renewal of those contracts. The United States Supreme Court in *J.I. Case Co. v. National Labor Relations Board*, 321 U.S. 332 (1944), shed light on this interplay between employment contracts and the PEBA's federal counterpart, the National Labor Relations Act (NLRA), 29 U.S.C. Sections 151-169 (2012). The Court explained that "[c]ollective bargaining . . . results in an accord as to terms which will [g]overn hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone." *J.I.Case Co.*, 321 U.S. at 334-35. After the collective bargaining agreement is made, the employer makes hiring decisions and may enter into individual employment agreements with the persons hired. *Id.* at 335. "The employer, except as restricted by the collective agreement itself and *except that he must engage in no unfair labor practice or discrimination*, is free to select those he will employect

or discharge." *Id.* (emphasis added). The Court emphasized that "[i]ndividual contracts no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the [NLRA.]" *Id.* at 337. "Wherever private contracts conflict with [the NLRA's] functions, they obviously must yield or the [NLRA] would be reduced to a futility." *Id.*

{17}     The same principles apply in the circumstances of the present case. The College is free to enter into employment contracts with whomever it chooses to hire, it may discharge any employee it has hired, or it may decide not to renew an employee's contract—so long as those actions are not either restricted by the CBA or in conflict with the PEBA or the Resolution. *Cf. Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-031, ¶ 15, 123 N.M. 239, 938 P.2d 1384 (explaining that our appellate courts will generally interpret language of the PEBA the same way that similar language in the NLRA has been interpreted); *see also* Section 10-7E-19(A) (stating that "[a] public employer . . . shall not discriminate against a public employee . . . because of the employee's membership in a labor organization[.]"

{18}     It follows that if the College decided not to renew Employees' contracts as a means of discriminating against them for their union activities, that decision would

11

violate the prohibited practices section of the Resolution. This was the question presented to the Board by the Union's complaint—i.e., whether the non-renewals were motivated by discriminatory or retaliatory reasons. Instead of answering this question, however, the Board elected to dismiss the complaint on the ground that there was no conflict between the CBA's provisions requiring discharge or termination for cause and the Handbook's provisions permitting non-renewal for no reason. The Board's dismissal, being based on a ground not alleged in the Union's complaint, was arbitrary and capricious, and we therefore reverse its decision.

{19} We remand this case to the Board for reinstatement of the Union's complaint. We emphasize that we are not addressing whether the Union can prove its allegations of retaliatory motive because this is a matter for proof before the Board. Instead, we hold only that the Union is entitled to a hearing on those allegations, consistent with the Resolution, which provides that the Board "may hold hearings for the purposes of . . . adjudicating disputes and enforcing the provisions of the . . . Resolution[.]" Resolution, *supra*, at 8.

**CONCLUSION**

{20} For the foregoing reasons, we reverse the Board's decision dismissing the Union's complaint and remand for proceedings consistent with this Opinion.

{21}    **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**