This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41193

EMELI NAJERA, as Personal
Representative to the ESTATE OF
OSCAR NAJERA, Deceased,

       Plaintiff-Appellant,

v.

NEW MEXICO LAW ENFORCEMENT
ACADEMY BOARD and LEA DIRECTOR
KELLY ALZAHARNA,

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Court Judge**

Ives & Flores, PA
Laura Schauer Ives
Adam C. Flores
Alyssa Quijano
Henry A. Jones
Andrew J. Pavlides
Albuquerque, NM

Leon Howard
Maria Martinez Sanchez
Lalita Moskowitz
Albuquerque, NM

for Appellant

Law Office of Michael Dickman
Michael Dickman
Santa Fe, NM

for Appellees

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Plaintiff Emeli Najera, personal representative of the estate of her brother, Oscar Najera, appeals the district court's Rule 1-012(B)(6) NMRA dismissal of her complaint against Defendants the New Mexico Law Enforcement Academy Board (the Board) and its Director, Kelly Alzaharna. In its order, the district court determined that there was no applicable waiver of sovereign immunity supporting Plaintiff's case, and that quasi-judicial immunity, an affirmative defense raised by Defendants, insulated Defendants from liability for the conduct Plaintiff alleged. Plaintiff advances two arguments supporting reversal. First, Plaintiff asserts her claims are not barred by sovereign immunity under the New Mexico Tort Claims Act (NMTCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2020), because Defendants are law enforcement officers excepted from such immunity under Section 41-4-12. Second, Plaintiff argues that quasi-judicial immunity does not apply to Defendants in this circumstance. We conclude that there is no waiver of sovereign immunity under Section 41-4-12 and affirm for this reason.

**BACKGROUND**

**{2}** This case arises out of the police-involved shooting and death of Oscar Najera in 2021. Plaintiff filed suit under the NMTCA, asserting negligence, failure to comply with statutory duties resulting in wrongful death, and negligent operation of a building.[1] In general terms, Plaintiff alleged that Defendants breached their purported statutory duties to: (1) provide meaningful oversight of police departments; (2) ensure both new recruits and in-service officers (including those involved in the underlying shooting) are in "compliance with statewide training requirements"; and (3) suspend or revoke a peace officer's certification if warranted. *See* NMSA 1978, §§ 29-7-3 to -7.2 (1969, as amended through 2020) (containing the statutory authority pertaining to Defendants' duties at the time of Mr. Najera's death).[2] As grounds for liability, Plaintiff specifically alleged that the officers involved in Mr. Najera's death had not, at the time of the shooting in question, been qualified on their service weapons and had not received the training required by statute—both of which, Plaintiff alleged, are criteria that Defendants oversee and enforce. Plaintiff further alleged that one of the officers involved had

---

[1] On appeal, Plaintiff has expressly abandoned her argument regarding negligent operation of a building. We, therefore, do not address it.

[2] The Law Enforcement Training Act (the LETA), NMSA 1978, §§ 29-7-1 to -16 (1969 as amended through 2023), was substantially amended and revised in 2022, after the shooting of Mr. Najera took place. *See* 2022 N.M. Laws, ch. 56, §§ 4-13. Because the Legislature has not clearly indicated that these amendments apply retroactively, all references to Defendants' statutory duties under the LETA in this opinion refer to the 2020 version of the act, which was in force at the time of the underlying incident in question. *See GEA Integrated Cooling Tech. v. State Tax'n & Revenue Dep't*, 2012-NMCA-010, ¶ 17, 268 P.3d 48 ("Our courts follow the general rule that a statutory amendment applies prospectively unless the Legislature clearly intends to give the amendment retroactive effect.").

previously been the subject of an excessive force investigation by Defendants, which the Board dismissed.

**{3}** Defendants filed a motion to dismiss the complaint under Rule 1-012(B)(6), arguing primarily that there is no applicable waiver of sovereign immunity by which Plaintiff can maintain her case, or, alternatively, that quasi-judicial immunity insulated Defendants from liability for their alleged failure to suspend or revoke the license of the officer who had been previously accused of excessive force violations. After receiving full briefing and holding a hearing, the district court granted Defendants' motion, concluding that (1) Defendants are not law enforcement officers within the meaning of Section 41-4-12 of the NMTCA, and, as such, no waiver of sovereign immunity applies to Plaintiff's claims; and (2) "Defendants also are entitled to absolute quasi-judicial immunity as to their alleged acts and omissions regarding their handling of a disciplinary complaint" involving the officer who had been previously accused of excessive force violations. Plaintiff appeals.

## DISCUSSION

**{4}** A district court's dismissal of a complaint under Rule 1-012(B)(6) is reviewed de novo. *Valdez v. N.M. Dep't of Transp.*, ___-NMCA-___ ¶ 5, ___P.3d___ (A-1-CA-40615, Dec. 11, 2024). "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Id.* (internal quotation marks and citation omitted). "The standard of review for determining whether governmental immunity under the [NM]TCA bars a tort claim is a question of law which we review de novo." *Id.* ¶ 4 (internal quotation marks and citation omitted).

**{5}** On appeal, Plaintiff advances several arguments asserting that her claims are not barred by sovereign immunity. First, Plaintiff argues that Defendants are "law enforcement officers" within the meaning of Section 41-4-12 because they are "vested by law with the power to maintain order." *See id.* (waiving sovereign immunity for the tortious conduct of a law enforcement officer and defining such an officer, in part, as a person "vested by law with the power to maintain order"). Plaintiff maintains that Defendants' statutory duties to "regulate law enforcement training and certification" and to ensure officers are "competent, trained, and of good moral character" amount to a duty to "maintain order." *See* §§ 29-7-4 to -7.2 (providing the requirements for officer certification and vesting Defendants with the power to suspend or revoke officer certifications as necessary). Second, Plaintiff advances a vicarious liability argument based on the fact that the majority of Board members were actively employed as law enforcement officers at the time of Mr. Najera's death. *See* § 29-7-3(B)-(C) (requiring five of the nine members of the Board to be various actively serving law enforcement officers). We address these arguments in turn.

## I. Plaintiff's Argument That Defendants Are Law Enforcement Officers Under the NMTCA Is Not Persuasive

**{6}** Whether Defendants are "law enforcement officers" under Section 41-4-12 is a matter of statutory interpretation. *See Valdez*, ___-NMCA-___ ¶ 11 ("In applying these waivers of immunity, we first determine the legislative intent in the enactment of the waiver and then interpret the language of the waiver according to its plain meaning." (internal quotation marks and citation omitted)). "To determine the Legislature's intent, we begin by examining the language used by the Legislature as the primary indication of legislative intent." *Id.* (internal quotation marks and citation omitted). "When called upon to interpret statutory provisions giving rise to genuine uncertainty as to what the Legislature was trying to accomplish, we look beyond the language to the purpose of the statute to ascertain legislative intent." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 17, 492 P.3d 586 (alteration, internal quotation marks, and citation omitted).

**{7}** We first note that the NMTCA defines "law enforcement officer" twice, once in Section 41-4-12 and again in Section 41-4-3(D). Section 41-4-3(D) states, in pertinent part, that a "law enforcement officer" is "a full-time salaried public employee" or "a part-time salaried police officer" "whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes." Section 41-4-12 provides, "'[L]aw enforcement officer' means a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." On appeal, Plaintiff limits her arguments regarding Defendants' status as "law enforcement officers" to the definition provided in Section 41-4-12, noting that—among other amendments—the term "principal duties" was removed from the provision in 2020, thereby indicating, in Plaintiff's view, a legislative intent to broaden the definition of "law enforcement officer" beyond what is meant by Section 41-4-3(D). *See* 2020 N.M. Laws, ch. 7, § 3.

**{8}** Defendant responds by asserting that both Section 41-4-3(D) and Section 41-4-12 "co-exist together" and relies on a multitude of cases interpreting either Section 41-4-3(D) or the pre-2020 version of Section 41-4-12. However, we remain cognizant of the general rule that "[a]doption of statutory amendments is presumptive evidence of a legislative intention to change existing law, including existing judicial interpretations of the original statute." *Dunn v. State ex rel. Tax'n & Revenue Dep't*, 1993-NMCA-059, ¶ 17, 116 N.M. 1, 859 P.2d 469. We further note that the general/specific rule of statutory construction provides that "a statute dealing with a specific subject will be considered an exception to, and given effect over, a more general statute." *Albuquerque Commons P'ship v. City Council of City of Albuquerque*, 2011-NMSC-002, ¶ 23, 149 N.M. 308, 248 P.3d 856 (internal quotation marks and citation omitted). Here, Section 41-4-3(D) contains the general definition of "law enforcement officer" under the NMTCA, but Section 41-4-12 provides the specific waiver of sovereign immunity through which Plaintiff advances her claims. *See* § 41-4-12 (defining "law enforcement officer" "for purposes of [that] section"). Thus, while existing precedent regarding the meaning of "law enforcement officer" under both Section 41-4-3(D) and the pre-2020 version of Section 41-4-12 may guide our analysis, it is not dispositive of our inquiry.

**{9}** Nonetheless, Plaintiff fails to explain on appeal how the 2020 amendments to Section 41-4-12 apply to this case or otherwise incorporate Defendants into the meaning of "law enforcement officer" contained therein. While Plaintiff argues that "the power to maintain order is sufficient to make a person a law enforcement officer" under Section 41-4-12, she does not contend that the term "maintain order" in Section 41-4-12 should be construed differently than the term "maintain public order" in Section 41-4-3(D). In fact, citing case law construing Section 41-4-3(D), Plaintiff accepts that whether an employee has the power to "maintain order" under Section 41-4-12 depends on whether the employee's conduct constitutes a "traditional law enforcement function." *See Rayos v. State ex rel. N.M. Dep't of Corr.*, 2014-NMCA-103, ¶ 9, 336 P.3d 428 (construing Section 41-4-3(D) and stating that whether one is a "law enforcement officer" is determined by whether they perform "duties and activities traditionally performed by law enforcement officers" (internal quotation marks and citation omitted); *Dunn v. McFeeley*, 1999-NMCA-084, ¶ 24, 127 N.M. 513, 984 P.2d 760 ("[T]he phrase 'maintain public order' should be understood as encompassing only duties traditionally performed by law enforcement officers." (internal quotation marks and citation omitted)). Indeed, Plaintiff notes that case law interpreting Section 41-4-3(D) "may inform" our interpretation of Section 41-4-12.

**{10}** Plaintiff asserts, in conclusory fashion, that Defendants' statutory duties regarding training and certification of in-service officers fall within the ambit of traditional law enforcement functions. *See* §§ 29-7-4.3 to -7.1 (granting Defendants the powers to, among other things, issue certifications to officers graduating from a basic training program, suspend or revoke such certification, and implement officer training standards and requirements). However, Plaintiff does not explain this contention. In support of her argument, Plaintiff relies on two out-of-state cases that, according to her, recognize the notion that "making decisions about law enforcement officer qualifications and training constitute traditional law enforcement activity." *See Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 329, 780 A.2d 410 ("The hiring, training, and supervising of police officers constitute part of the [c]ommissioner's "law enforcement functions."); *Troupe v. Sarasota Cnty., Fla.*, No. 8:02-cv-53-T-24MAP, 2004 WL 5572030, at *13 (M.D. Fla. Jan. 22, 2004) (order) (holding that a local government "has no authority and control over a sheriff's law enforcement function" which includes "how to hire, train, supervise, or discipline his deputies"), *aff'd*, 419 F.3d 1160 (11th Cir. 2005). However, each of these cases analyzed, and were governed by, different statutory schemes than that present in the instant case, and each resulted in findings that the defendants were not liable for the harms alleged. *See Cherkes*, 140 Md. App. at 331; *Troupe*, 2004 WL 5572030, at **13-16.

**{11}** For their part, Defendants primarily respond by asserting that their role in law enforcement is limited to administrative oversight and does not fit within the narrow meaning of "maintain order" in the NMTCA. *See Limacher v. Spivey*, 2008-NMCA-163, ¶ 13, 145 N.M. 344, 198 P.3d 370 ("Although maintaining public order is not clearly defined in [the NMTCA], case law has interpreted the phrase to mean essentially the same thing as handling breaches of the peace."). Defendants further argue that the historically strict interpretation of waivers to sovereign immunity under the NMTCA

generally does not extend to their conduct as alleged in this case. *See Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 51, 409 P.3d 930 ("[E]xceptions to the [NM]TCA's general rule of immunity are strictly construed.").

{12} In support, Defendants offer, as they did before the district court, a plethora of cases interpreting the term narrowly and in a manner consistent with traditional law enforcement activities, such as maintaining breaches of the peace, and excluding administrative functions. *See Limacher*, 2008-NMCA-163, ¶¶ 13-14 ("Although maintaining public order is not clearly defined in the statute, case law has interpreted the phrase to mean essentially the same thing as handling breaches of the peace."); *Dunn v. McFeeley*, 1999-NMCA-084, ¶ 24, 127 N.M. 513, 984 P.2d 760 (stating the same and adding that "maintaining public order should be understood as encompassing only duties traditionally performed by law enforcement officers." (internal quotation marks and citation omitted)); *Baptiste v. City of Las Cruces*, 1993-NMCA-017, ¶¶ 6-7, 9, 115 N.M. 178, 848 P.2d 1105 (same); *Coyazo v. State*, 1995-NMCA-056, ¶¶ 10-19, 120 N.M. 47, 897 P.2d 234 (rejecting an argument that prosecutors "maintain public order" because, despite prosecuting criminal cases, prosecutors "are not engaged in the same activities as the officer on patrol"); *Anchondo v. Corrs. Dep't*, 1983-NMSC-051, ¶ 7, 100 N.M. 108, 666 P.3d 1255 (holding that neither the Secretary of Corrections nor a prison warden "engage in any of the traditional duties of law enforcement officers" and that they "are merely administrative officers appointed by the governor to oversee, administer, and supervise the state's corrections system" (internal quotation marks omitted)).

{13} We acknowledge that many, if not all, of the above cases focus on the definition contained in Section 41-4-3(D) and its inclusion of the phrase "principal duties." *See, e.g.*, *Limacher*, 2008-NMCA-163, ¶ 14 ("When deciding whether a particular employee is a law enforcement officer as defined in Section 41-4-3(D), our jurisprudence tells us to first look to the statutory definition of that particular employee's duties and then determine whether the employee's primary duties match any of the statutory criteria."). As noted above, Plaintiff argues that the Legislature intended Section 41-4-12's definition of "law enforcement officer" to apply more broadly than Section 41-4-3(D)'s definition in part because "principal duties" was removed from the former's text in 2020. 2020 N.M. Laws, ch. 7, § 3. However, Plaintiff does not explain how removal of the term "principal duties" from Section 41-4-12 renders the case law cited by Defendants inapplicable here, particularly in light of the fact that "maintain public order"—now "maintain order"—is a prominent part of the analysis in existing precedent. *See, e.g.*, *Limacher*, 2008-NMCA-163, ¶ 13.

{14} Further, Plaintiff does not engage in any developed statutory construction argument supporting their proposed definition of "maintain order," specifically, or "law enforcement officer," more generally. In the absence of such argument, we are not persuaded the district court erred in concluding that immunity has not been waived under Section 41-4-12 of the NMTCA. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127

N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the district court, and the party claiming error bears the burden of showing such error).

## II. Plaintiff's Theory Regarding Vicarious Liability Is Not Persuasive

**{15}**     Notwithstanding this conclusion, we must briefly address Plaintiff's second argument that Defendants may be held liable under the NMTCA for the allegedly unlawful shooting of Mr. Najera: that a majority of the Board's members were, at the time of the shooting at issue, actively serving police officers from various state agencies, so Defendants may be held vicariously liable under Section 41-4-12 for the members' purportedly negligent failure to fulfill their statutory duties related to officer training and oversight. *See* § 29-7-3(B)-(C). We conclude that Plaintiff has not sufficiently developed this argument and find no basis to reverse.

**{16}**     "To name a particular entity in an action under the [NMTCA] requires two things: (1) a negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee." *Abalos v. Bernalillo Cnty. Dist. Atty's Office*, 1987-NMCA-026, ¶ 23, 105 N.M. 554, 734 P.2d 794. "If a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action under the [NMTCA]. If the city or state directly supervises the employee, then the city or state can be named." *Id.* Plaintiff argues that that "[NM]TCA waives immunity for [the individual officer-members'] tortious conduct when acting on the LEA Board and makes the public body vicariously liable for the conduct of its employees [acting] in the scope of their duty." However, Plaintiff does not explain how a member of the Board, who is otherwise an actively serving police officer, is acting within the scope of their law enforcement duties while sitting as a Board member. *See Silva v. State*, 1987-NMSC-107, ¶ 15, 106 N.M. 472, 745 P.2d 380 ("A governmental entity is not immune from liability for any tort of its employee *acting within the scope of duties for which immunity is waived.*" (emphasis added)).

**{17}**     Moreover, even if the five police officer-members of the Board were acting in a law enforcement capacity while sitting on the Board, Plaintiff has not explained how their failure to revoke the certifications of the at-issue officers constitutes tortious conduct. We note that the statutes pertaining to the revocation of officers' certifications are permissive and do not create a mandatory duty. *See* § 29-7-7.1 ("Failure to complete in-service law enforcement training requirements *may* be grounds for suspension of a certified police officer's certification." (emphasis added)); § 29-7-13 ("After consultation with the employing agency, the board . . . *may* suspend or revoke a police officer's certification." (emphasis added)). In light of the arguments on appeal, we are not convinced by Plaintiff's vicarious liability argument or that it provides a basis to reverse the district court. *See Aragon*, 1999-NMCA-060, ¶ 10.

**CONCLUSION**

**{18}** Because Plaintiff has not established that any waiver of sovereign immunity supports her claims, the district court properly dismissed the case, and we need not address her arguments regarding quasi-judicial immunity. We affirm.

**{19}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JANE B. YOHALEM, Judge**